**UNITED STATES of America, Plaintiff,**

v.

**Nick GUGLIELMO, and Joseph B. Delmonico, a/k/a Joey D., Defendants.**

**No. 64 CR 505.**

United States District Court
N. D. Illinois.
July 29, 1965.

---

Edward V. Hanrahan, U. S. Atty. Northern District of Illinois and Dennis O'Brien, Asst. U. S. Atty., for the government.

Edward J. Calihan, Jr., Ann R. Lavin, Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

Defendants in a motion to suppress have placed in issue here a telephone company "pen register" system, by alleging that in the investigation and detection of the crime charged in this case, use of such a pen register constituted a violation of § 605 of the Federal Communications Act (Title 47, U.S.C.).

The facts related to this issue are for the most part uncontroverted.

The pen register is a mechanical device attached on occasion to a given telephone line, usually at central telephone offices. A pulsation of the dial on a line to which the pen register is attached records on a paper tape dashes equal to the number dialed. The paper tape then becomes a permanent and complete record of outgoing calls as well as the numbers called on the particular line. Immediately after the number is dialed and before the line called has had an opportunity to answer (actually the pen register has no way of determining or recording whether or not the calls are answered) the pen register mechanically and automatically is disconnected. There is neither recording nor monitoring of the conversation.

In this case the Illinois Bell Telephone Company at the request of agents of the Internal Revenue Service installed a pen register on the lines used by the defendants. (The indictment alleges defendants were engaged in the business of accepting wagers.) Neither the defendants nor the parties called knew of or acquiesced in this Internal Revenue Service request.

Pen register tapes which recorded the calls from defendants' lines were turned over by the Illinois Bell Telephone Company to the Internal Revenue Service agents who in turn used these records to further develop leads and to conduct gambling investigations resulting in the obtaining of the search warrants which produced the instant indictments.

§ 605 of Title 47, U.S.C., reads in pertinent part as follows:

"No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the

existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: Provided, That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress. June 19, 1934, c. 652, Title VI, § 605, 48 Stat. 1103."

Applied to the facts recited above, this language of the statute is clear and unequivocal. The existence of a communication was divulged without the consent of the sender or other party to the call.

In an attempt to avoid the scope of § 605 the government seeks to analogize the present factual circumstances with those in People v. Schneider, 45 Misc. 2d 680, 257 N.Y.S.2d 876, and Schmukler v. Ohio Bell Telephone Co., Ohio Com. Pl., 116 N.E.2d 819. Although both Schneider and Schmukler involved the same pen register system as here, substantial factual distinctions render them unavailing.

In Schneider the party subscriber called authorized the divulging of the fact that he was called.

In Schmukler, the divulging was not only of pen register recordation but also the actual monitoring of calls. Furthermore it was made not by the Ohio Bell Telephone Company but by the subscriber whose calls were recorded and monitored. The court's rationale, inappropriate here, was that § 605 does not proscribe an interception or wire tapping as such but only forbids the publishing or divulging of such information. (In this regard see Benanti v. United States, 355 U.S. 96, 100 n. 5, 78 S.Ct. 155, 2 L.Ed.2d 126).

■ The government's claim that the pen register recordation here was consented to is unsupported by the facts. Neither the defendant callers nor their intended receivers (both considered "senders" within the meaning of the statute, Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134) consented to having their calls recorded. Nor can consent be inferred from the fact that defendants requested installation of phone service. Recording calls by use of the pen register is only an occasional service of Illinois Bell Telephone Company and not a practice generally known to and accepted by its subscribers or published in its tariffs. (See: United States v. Gallo, 2 Cir., 123 F.2d 229, 231).

■■ It is obvious from the facts, that the instant unconsented use of a pen register violated the integrity of telephone communications and the clear prohibition of § 605. The fruits of such a violation are, of course, inadmissible in evidence, much as proper investigation and alert detection of crime should be encouraged. (Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307).

■ Since it is clear that but for the above described violation of § 605 no warrant would have issued and no indictment would have been returned, the indictments against the defendants tied ineluctably with the illegal wire tapping, must be and accordingly are hereby dismissed. (See: United States v. Tane, 2 Cir., 329 F.2d 848).