UNITED STATES of America,
Plaintiff-Appellant,

v.

Rocco DOTE and Theodore P. Veesart,
Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Nick GUGLIELMO and Joseph B. Delmonico, a/k/a Joey D., Defendants-Appellees.

Nos. 15456, 15457.

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1966.

Edward V. Hanrahan, U. S. Atty., Lawrence Jay Weiner, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, James J. Casey, Asst. U. S. Attys., of counsel, for appellant.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

We have two appeals for consideration. These have been consolidated in this court, as they were in the district court for hearing on a motion to suppress.

In No. 15456, the indictment charged Rocco Dote and Theodore P. Veesart, who were alleged to be engaged in the business of accepting wagers, with willful

failure to pay the special occupational tax on wagering and failure to file a special wagering tax return and application for registry in violation of 26 U.S.C.A. § 7203.

In No. 15457, Nick Guglielmo and Joseph B. Delmonico, also known as Joey D., were charged similarly.

In the United States District Court for the Northern District of Illinois, Honorable William J. Campbell, Chief Judge, presiding, defendants-appellees filed in each case a motion to suppress certain evidence alleged to have been obtained by the Government in violation of Title 47, U.S.C.A. § 605.[1] After a full evidentiary hearing thereon, the trial court found such a violation and that but for such violation no search warrant would have issued and no indictment would have been returned. It further found that the indictments were "tied ineluctably with the illegal wire tapping" and, therefore, had to be dismissed.

Accordingly, an order was entered granting the motion to suppress the evidence obtained through the illegal use of a "pen register" system and dismissing the indictments. This action was supported by a well-reasoned memorandum opinion reported as United States v. Guglielmo, 245 F.Supp. 534 (D.C. 1965).

The Government has appealed from such orders entered by the trial court.

A pen register was accurately described in the district court's memorandum opinion, as follows:

"The pen register is a mechanical device attached on occasion to a given telephone line, usually at central telephone offices. A pulsation of the dial on a line to which the pen register is attached records on a paper tape dashes equal to the number dialed. The paper tape then becomes a permanent and complete record of outgoing calls as well as the numbers called on the particular line. Immediately after the number is dialed and before the line called has had an opportunity to answer (actually the pen register had no way of determining or recording whether or not the calls are answered) the pen register mechanically and automatically is disconnected. There is neither recording nor monitoring of the conversation." *Guglielmo*, supra, at 535.

The facts relevant to the issue before us are largely undisputed.

In June, 1963, Illinois Bell Telephone Company "indicated" to the Internal Revenue Service that a certain telephone was being used for bookmaking pur-

---

1. The relevant parts of § 605 follow: "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, con-

tents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: * * *." 47 U.S.C.A. § 605.

poses. After verification by the Revenue Service and at its request, Illinois Bell installed pen registers on the lines used by bookmaking wirerooms. Neither the wirerooms, the defendants, nor any of the parties called knew of or acquiesced in this request by the Revenue Service.

The pen register tapes, which recorded the calls from the wirerooms, "were turned over by the Illinois Bell Telephone Company to the Internal Revenue Service agents who in turn used these records to develop leads and to conduct gambling investigations resulting in the obtaining of the search warrants which produced the instant indictments." *Guglielmo*, supra.

### I

Defendants-appellees have moved to dismiss the instant appeals on the ground that they are from an order suppressing evidence, which, they assert, is not a final appealable order. We shall first treat that question.

While it is true that a pre-trial order suppressing evidence is generally not appealable, DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957), the pre-trial dismissal of an indictment, after granting a pre-trial motion to suppress evidence on which the indictment is based, is appealable. 18 U.S.C.A. § 3731; United States v. Tane, 2 Cir., 329 F.2d 848, 851–852 (1964).

The district court, in dismissing the indictments in this case, relied on *Tane.* We agree that "Where, as here, the basis of the dismissal of the indictment is inextricably intertwined with the basis of the suppression order, both orders must be reviewed together." *Tane,* supra.

In our considered judgment, the appeal lies in the premises, and in order to review the order dismissing the indictments, we must review the order suppressing the evidence ultimately obtained through the use of the pen register.

### II

The issue generally presented by the Government's appeal is whether dial impulses which a pen register records are precluded from disclosure by Clause 2 of 47 U.S.C.A. § 605, which provides that:

" * * * and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

We are advised that no federal court of appeals has passed on this precise question. However, the United States District Court for the Eastern District of Michigan, Southern Division, Honorable, Wade H. McCree, Jr., District (now Circuit) Judge, presiding, in a case almost identical to the instant one, has ruled on this issue adversely to the Government's contentions. This well-reasoned opinion is reported as United States v. Caplan, 255 F.Supp. 805 (1966). Chief Judge Campbell's opinion is cited favorably therein at 807–808.

The Government urges that the use of the pen register did not *intercept a communication* within the meaning of § 605, supra. It contends that Illinois Bell was the intended recipient of transmitted signals, just as it can be said that a subscriber, in placing a call, makes a request of the company to connect him with the telephone of another subscriber. Thus, as an intended recipient of the signal, the company may legally record it and, by providing its own requisite consent, reveal it. As a corollary, it is argued that the defendants, who apparently did not initiate the telephone calls but were discovered as recipients, were not parties to the communication with the company, and hence had no standing to complain of the recordation and divulgence of the same.

Alternatively, it is urged that if communications are considered to have been made to the defendants, Illinois Bell, being engaged in the transmission of an *intrastate* communication, could not "in-

tercept" the communication within the meaning of the second clause of § 605.

Finally, the Government contends that § 605 applies only to substantive communications, that is, to interchanges of thought.

■ We see no reason to indulge in a game of words, either to decide whether the dial pulses one subscriber initiates are the *same* signals received by the telephone of a recipient subscriber, or whether the telephone company as a legal entity is sufficiently embodied in the wires and devices of its system to be an intended recipient of the dial pulse signal. Notwithstanding a minimal plausibility rendered the Government's argument by its communications theory, it is only by analogy that dial pulses are viewed as a request for a connection. Of course, no person was the intended recipient of the dial pulses, but rather the communications system through which the pulses were to be relayed as a signal to activate the telephone of the intended recipient of a telephone call. But that relayed or translated signal is within the definition of "wire communication" as found in 47 U.S.C.A. § 153(a), that is:

> "The transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission." 47 U.S.C.A. § 153(a).

The *dial* telephone system does not generally require human intervention to connect two telephones. The telephone company was not therefore the intended recipient of the signal. The "intended recipient" was the telephone of another subscriber, which would ring to notify the subscriber of a call. Ultimately, the intended human recipient of the signal was the subscriber called.

■ We think it sufficient to constitute a communication within the meaning of the statute, by one telephone subscriber to another to whom he intends to communicate, if the activity of the initiating subscriber in dialing his telephone would result in a signal to the telephone of the recipient subscriber.

■ We are not convinced by the Government's contention that the second clause of § 605, supra, which has been applied to *intrastate* communications, Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939), is not a proscription applicable to communications carriers.

The Government appears to argue that since the company is engaged in transmission of telephone communications, it must intercept them and that, therefore, the second clause of § 605 could not apply to it. Without quibbling over the meaning of "intercept", it is sufficient to say that even if we assume that the second clause of § 605 may not be construed in a manner prohibiting or interfering with the normal and necessary business of the company, it is nonetheless not exempted from the prohibition against *divulgence or publication*. We have not been shown that the statute does exempt it.

■ Furthermore, since the company acted at the instance of the Government, at least after the company notified the Government of its suspicion of bookmaking activities, and since the Government divulged the existence of the intercepted communication, the second clause of § 605 plainly applies to the Government. Nardone v. United States, 302 U.S. 379, 384, 58 S.Ct. 275, 82 L.Ed. 314 (1937).

The Government's final contention is that § 605 was intended to apply only to the substance of communications, that is, to interchanges of thought. We have been cited to Supreme Court decisions in which the divulgence of intercepted messages, Nardone, supra, 302 U.S. at 380, 381, 58 S.Ct. 275; Weiss, supra, at 331; talk, Nardone v. United States, 308 U.S. 338, 339, 60 S.Ct. 266, 84 L.Ed. 307 (1939); calls, Schwartz v. State of Texas,

344 U.S. 199, 201, 73 S.Ct. 232, 97 L.Ed. 231 (1952); or conversations, Goldstein v. United States, 316 U.S. 114, 117, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942); Rathbun v. United States, 355 U.S. 107, 108, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), has been prohibited. Insofar as the nature of a communication is concerned, these decisions go only to the facts presented and indicate only that the Supreme Court has not yet been called upon to decide a case such as the one before us. Our concern in the instant case is whether the existence of an intercepted communication was divulged or published.

■ The ringing of a telephone may be more than merely a signal indicating a call. Even if a call is not answered, a call at a certain time, or a certain number of rings, or repeated calls may well be a pre-arranged message or signal. The ringing of the telephone, therefore, may of itself be a communication, and a device, attached to the telephone line, which indicates to a third party that such a communication is taking place or is about to take place, intercepts it. United States v. Caplan, supra, 255 F.Supp. at 808.

■ Further, we cannot pretend that the Government, while not hearing any verbal communication, did not inferentially have a reasonably good notion of the general substantive nature of the communications the pen register indicated were being initiated. In circumstances such as those in this case, knowledge of the existence of the communication is knowledge of its likely character.

■ As the Supreme Court has said, in speaking of § 605, "distinctions designed to defeat the plain meaning of the statute will not be countenanced." Benanti v. United States, 355 U.S. 96, 100, 78 S.Ct. 155, 157, 2 L.Ed.2d 126 (1957). Cf. Nardone v. United States, 308 U.S. 338, 340, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

■ Of course, Illinois Bell may make a proper business use of a pen register with the consent of its subscriber. Its original use was to check dialing accuracy of new dial customers. Its service use has included a situation where a customer complains he is being charged for more calls than he makes. Thus, the pen register serves its intended business service function.

We hold that the district court properly construed the statute under consideration and did not err in entering the suppression order and in finally dismissing the indictments in question.

The motion to dismiss these appeals is denied. The final orders of the district court appealed from are affirmed.

Dismissal denied.

Affirmed.