**In re Robert ALPEREN and Marilyn Alperen.**

**E.B.D. Nos. 72–106–J, 72–107–J.**

United States District Court,
D. Massachusetts.

Feb. 28, 1973.

Albert F. Cullen, Jr., Atty., Dept. of Justice, Organized Crime Unit, Boston, Mass., for Government.

Barry Gerstein, Boston, Mass., for witnesses.

## MEMORANDUM ON GRAND JURY WITNESSES' DEFENSES TO GOVERNMENT'S MOTION TO HOLD WITNESSES IN CONTEMPT

JULIAN, Senior Judge.

This case is before the Court on the Government's motion to hold the witnesses, Robert and Marilyn Alperen, in civil contempt for their continuing refusal to answer questions before the Special Grand Jury.[1]

■ One defense raised by the witnesses is the alleged illegality of the court-ordered interceptions of their wire communications.[2] Specifically, the witnesses contend that the Government failed to comply with 18 U.S.C. § 2516(1), which requires that either the Attorney General or a specially designated Assistant Attorney General authorize applications for the interception of wire communications.

In defense of the legality of the wire interceptions here in question, the Government filed affidavits of John N. Mitchell, former Attorney General of the United States, Harold P. Shapiro, Deputy Assistant Attorney General in the Criminal Division of the United States

1.  28 U.S.C. § 1826.

2.  See 18 U.S.C. § 2515; Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

Department of Justice, Henry E. Petersen, Assistant Attorney General in Charge of the Criminal Division, and Will Wilson, former Assistant Attorney General in Charge of the Criminal Division.

The witnesses filed objections to the filing of the said affidavits. Only their objections to the filing of the Wilson affidavit, and accompanying letter to one William G. Earle, dated June 16, 1969, are sustained. Neither document appears to relate to the wire-tap authorizations here in issue.

■ However, on the basis of the affidavits of John N. Mitchell, Harold P. Shapiro, and Henry E. Petersen, the Court finds and rules that former Attorney General John N. Mitchell personally authorized the wire-tap applications in this case in compliance with 18 U.S.C. § 2516(1).[3]

Accordingly, the witnesses' contention that the wire interceptions were illegally authorized is overruled.

The witnesses also attack the legality of the wire-taps as actually conducted. Specifically, the witnesses contend that the use of a pen register is not authorized by statute, and cite Gelbard v. United States, 408 U.S. 41, 46, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), to the effect that "[e]xcept as expressly authorized in Title III, however, all interceptions of wire and oral communications are flatly prohibited."

■■ The use of pen registers[4] by governmental authorities has engendered considerable controversy. The question of whether pen registers "intercept"[5] wire or oral communications within the meaning of the Communications Act, 47 U.S.C. § 605, as well as Title III, has been answered in different ways by different courts.[6] It would serve no useful purpose to review, and seek to reconcile, the various analyses of the cited cases. Let it suffice to say that this Court adopts the reasoning of Judge Tjoflat in United States v. Lanza, 341 F.Supp. 405, 421–422 (M.D.Fla.1972), and holds that a pen register, when used in conjunction with a court-ordered wiretap, as here, does "intercept" wire communications within the meaning of Title III. The Court further holds that the legality of a court-ordered pen register depends directly upon the legality of the court-ordered wiretap. In the instant case, the legality of the court-ordered use of a pen register is sustained by the legality of the court-ordered wiretaps under Title III.

■ The witnesses' argument may be construed to include the contention, though unexpressed, that the use of a pen register amounts to a general search proscribed by the Fourth Amendment in

---

3. The use of affidavits to determine the factual issue of whether the Attorney General personally authorized the wire-tap application in this case is permitted by Fed.R.Crim.P. 12(b)(4); see United States v. Ceraso et al., 467 F.2d 647, (3d Cir. 1972), and United States v. Becker, 461 F.2d 230, 235 (2d Cir. 1972). See also United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972), and United States v. Doolittle, 341 F.Supp. 163 (M.D. Ga.1972).

4. See United States v. Caplan, 255 F.Supp. 805, 807 (E.D.Mich.1966) and United States v. Covello, 410 F.2d 536, 542, note 7 (2d Cir. 1969), for definitions of "pen register."

5. As used in Title III, "intercept" means the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

6. See United States v. Focarile, 340 F. Supp. 1033 (D.Md.1972); United States v. King, 335 F.Supp. 523 (S.D.Cal. 1971); United States v. Vega, 52 F.R.D. 503 (E.D.N.Y.1971); United States v. Escandar, 319 F.Supp. 295 (S.D.Fla. 1970), reversed on other grounds sub nom. United States v. Robinson, 468 F.2d 189 (5th Cir. 1972); United States v. Covello, 410 F.2d 536 (2d Cir. 1969); United States v. Dote, 371 F.2d 176 (7th Cir. 1966); United States v. Caplan, 255 F.Supp. 805 (E.D.Mich.1966); United States v. Guglielmo, 245 F.Supp. 534 (N.D.Ill.1965).

that every number dialed on the tapped wire is recorded. The contention is without merit. See United States v. Lanza, *supra*, at 422; United States v. King, 335 F.Supp. 523, 549 (S.D.Cal. 1971).[7]

■■ Finally, the witnesses urge a second defense, based upon the husband-wife privilege against adverse spousal testimony.[8] The witnesses contend that, if compelled to answer the Government's questions, they may be forced to incriminate one another.[9] The Government represents that its only interest is in the activities of third parties, and that any future prosecution of *either spouse is highly improbable.* The Court has reviewed the transcript of questions put by Government counsel, and has read the witnesses' prepared declination to answer, based, in part, upon the husband-wife privilege. The Court concludes that the witnesses' assertion of the husband-wife privilege is without merit. It is conceivable but most unlikely that one spouse's answer to any of the questions might furnish one or more links in a chain of evidence inculpating the other spouse, in the event that such other spouse does not avail himself or herself of the immunity. It is apparent from the wording of the questions that they are not designed to elicit adverse spousal testimony. In the unlikely event that such testimony is elicited, a motion to suppress brought by the aggrieved party at the appropriate stage of a criminal proceeding would sufficiently accommodate the purposes served by the husband-wife privilege.[10]

The Court, therefore, having overruled the witnesses' defenses, and having determined that the witnesses are refusing to answer questions before the Special Grand Jury without justification, orders that a hearing be held on Friday, March 2, 1973, at 10 a. m., in such courtroom as may be designated by the Clerk, at which time the witnesses will be afforded a final opportunity to comply with the Court's order of May 18, 1972, ordering them to appear and testify before the Grand Jury.

7. At a hearing on the legality of the wire interceptions, held on December 19, 1972, the Court received in evidence the documents (Exhs. 5–20) underlying the order of the issuing judge (Exh. 4) authorizing the interceptions in question. At that time the witnesses advanced the further contention that an extension of time for the filing of a report under 18 U.S.C. § 2519, showing the progress of, and continuing need for, the wire interceptions was granted by the issuing judge without statutory authority. On June 4, 1972, the issuing judge allowed a motion of the Government to extend the time by one day, from the date of June 6, 1971, which was a Sunday, to June 7, 1971. The reason for the requested extension was simply that the courts are not open on Sunday. The witnesses' objection is frivolous, and deserving of no further comment. See Fed.R.Crim.P. 45(a); cf. Fed.R.Civ.P. 6(a) and S.Ct. Rule 34(1).

8. The husband-wife privilege has been held applicable to grand jury proceedings. See, *e. g.*, United States v. George, 444 F.2d 310 (6th Cir. 1971); United States v. Weinberg, 439 F.2d 743 (9th Cir. 1971); Nanfito v. United States, 20 F.2d 376 (8th Cir. 1927).

9. Both witnesses were granted transactional immunity pursuant to 18 U.S.C. § 2514 by order of this Court on May 18, 1972. Continued refusal to testify, however, would vitiate the grant of immunity extended to the refusing spouse.

10. See United States v. George, 444 F.2d 310 (6th Cir. 1971).