**UNITED STATES of America**

v.

**Melvin Levant FREEMAN.**

**No. IP 73–CR–206.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 29, 1974.

John Hirschman, Chief Asst. U. S. Dist. Atty., Stanley B. Miller, Dist. Atty., for the Government.

Palmer K. Ward, Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY

NOLAND, District Judge.

Defendant is charged in a four count indictment with devising a scheme and artifice intended to defraud the Indiana Bell Telephone Company by the use of a "blue box" to place long distance telephone calls. The "blue box" is a mechanical device which may be placed on the caller's telephone line so as to utilize the box's electronics components to bypass or avoid the recording mechanisms of the company and, thus, make long distance telephone calls without paying for them. This, the indictment alleges, constitutes fraud by wire in violation of 18 U.S.C. § 1343.

Defendant attacks both the indictment and the evidence obtained by the government from the telephone company which led to the issuance of a search warrant. The results of the search led to the indictments herein. The facts alleged in the affidavit for the search warrant have been stipulated by the parties and were admitted into evidence by the Court at the suppression hearing.

On July 31, 1973, the Security Manager of Indiana Bell Telephone Company was advised by the Security Officer of General Telephone Company in Wisconsin that a certain individual in Wisconsin was being investigated for the use of a "blue box" in making long distance calls. One of the numbers being called was an Indianapolis number at the home of the defendant's father. The Indiana Bell Security Manager knew that the defendant herein had previously been arrested and convicted by the State of Indiana for the use of a "blue box" and had received a suspended one to ten year sentence.

Based on this information, the Bell Security Officer installed a Hekimian recorder on the telephone line at the defendant's father's home. The monitoring continued for six days with no indication of a "blue box" being used. However, one number called was that which belonged to defendant's ex-wife. After surveilling her home, the Bell Security Officer discovered that defendant's automobile was there most of the time and he decided to install the Hekimian recorder on her telephone line.

After the installation, he monitored the line from August 15, 1973 until at least September 4, 1973, and the monitor recorded the use of a "blue box" on the occasions charged in the indictment. The calls were made to points outside the State of Indiana and one of them was made to the telephone number assigned to the individual in Wisconsin who was being investigated for the use of a "blue box". On the strength of this information, a search warrant was issued.

## I. MOTION TO DISMISS

The defendant has argued that the indictment brought for alleged violation of 18 U.S.C. § 1343 does not state a public offense because the statute is intended to only cover schemes in which the party intended to be defrauded is the person to whom the communication is directed. Defendant asserts that § 1343 does not make illegal schemes to merely obtain free telephone service.

This argument has been raised and rejected in several cases. *See* Brandon v. United States, 382 F.2d 607 (10th Cir. 1967); United States v. Jaworski, 343 F.Supp. 406 (D.Minn.1972); United States v. Beckley, 259 F.Supp. 567 (N.D.Ga.1965). Most recently, in a district court in this circuit, the argument was also rejected. *See* United States v. DeLeeuw, 368 F.Supp. 426 (E.D.Wis.1974).

18 U.S.C. § 1343 provides that it is a crime to devise a scheme to obtain property by fraudulent pretenses using a wire communication facility to transmit any signal for the purpose of executing the scheme. Clearly, that statute applies to the use of a "blue box."

The "blue box" is clearly a device used in a scheme to take the telephone utility's property without payment therefor. The service offered for sale by the utility is the use of its equipment and personnel to transmit the

telephone electronic signal. That service is just as much a property as is gas or electricity or water. If a person were to tamper with or bypass a gas, electric, or water meter so that the use of the product did not register, he has surely taken the property which belongs to the utility. The use of a "blue box" to bypass the telephone company recording devices is equally a taking of the utility's property in a way which avoids payment therefor. It accomplishes the same purpose as any other theft. Therefore, § 1343 does apply to the activity charged herein and the motion to dismiss the indictment is denied.

## II. MOTION TO SUPPRESS

Defendant also seeks to suppress the evidence obtained against him as a result of the search warrant. He contends that the facts obtained by the FBI to support the warrant were facts obtained by the Bell Security Officer through the interception of the signals in violation of 47 U.S.C. § 605. He specifically asserts that this question has been decided in this circuit in United States v. Dote, 371 F.2d 176 (7th Cir. 1966).

47 U.S.C. § 605, as it read in 1966, prohibited the unauthorized publication of intercepted communications by the utility. Dote dealt with the use of "pen registers" to record the numbers called in a bookmaking operation. The devices were installed by the telephone utility at the request of the federal agents. In a later prosecution for failure to pay the federal wagering tax, the information was suppressed.

However, since Dote was decided in 1966, the Congress has amended § 605. The first sentence states "Except as authorized by Chapter 119, Title 18" no person may publish intercepted wire communications. Thus, the impact of Chapter 119 must be viewed in relationship to § 605.

18 U.S.C. § 2511(2)(a)(i) provides:
"It shall not be unlawful under this chapter for an operator of a switch-board, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: Provided, That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

Further, subsection (2)(a)(ii) provides:
"It shall not be unlawful under this chapter for an officer, employee, or agent of any communication common carrier to provide information, facilities, or technical assistance to an investigative or law enforcement officer who, pursuant to this chapter, is authorized to intercept a wire or oral communication."

These subsections were added in 1970 and are a part of Chapter 119 of the Omnibus Crime Control and Safe Streets Act of 1968.

Clearly this statute, which is an exception to the prohibition of 47 U.S.C. § 605, allows the utility to do precisely what was done here to protect its property and to disclose the information so gathered to the government. See United States v. DeLeeuw, 368 F.Supp. 426 (E.D.Wis.1974).

The action taken by the Bell Security Officer is the type of non-random and non-service control monitoring for the protection of the utility's property which is contemplated by 18 U.S.C. § 2511(2)(a)(i), and the disclosure of the information to the government agents was specifically sanctioned by subsection (2)(a)(ii). Accordingly, the Dote case is not controlling and there has been no violation of 47 U.S.C. § 605. Thus, the defendant's motion to suppress is denied.