UNITED STATES of America,
Applicant-Appellee,

v.

ILLINOIS BELL TELEPHONE
COMPANY, Movant-Appellant.

No. 75–1909.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1975.

Decided Feb. 23, 1976.

L. Bow Pritchett, Chicago, Ill., for movant-appellant.

Samuel K. Skinner, U. S. Atty., James P. Walsh, Asst. U. S. Atty., Chicago, Ill., for applicant-appellee.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and CHRISTENSEN, Senior District Judge.*

* Senior District Judge A. Sherman Christensen of the District of Utah sitting by designation pursuant to 28 U.S.C. § 294(d).

CHRISTENSEN, Senior District Judge.

. In a suppressed, *ex parte* proceeding in the United States District Court for the Northern District of Illinois, Eastern Division, the Department of Justice applied and was granted on September 18, 1975, an order which authorized the Bureau of Alcohol, Tobacco, and Firearms, Department of Treasury, to install a pen register device [1] on a particular telephone number. The order also affirmatively required appellant Illinois Bell Telephone Company (telephone company) to provide "facilities . . . information . . . and technical assistance necessary to accomplish the interception unobtrusively . . .", compensable at the prevailing rates for the furnishing of such facilities or technical assistance.

The district court issued the order in question based upon a finding of probable cause to believe that evidence of the commission of two misdemeanor violations of the Internal Revenue Code would be obtained through the use of a pen register attached to the particular telephone. A Special Agent of the Department of Alcohol, Tobacco and Firearms of the U.S. Treasury Department, signed an affidavit which recited that the particular telephone number was being used in connection with (1) failure to pay a tax imposed on those receiving wagers, 26 U.S.C. § 7262, and (2) failure to register as a person receiving wagers, 26 U.S.C. § 7272. The sufficiency of the affidavit to establish these facts is not questioned on this appeal.

The telephone company moved the district court to vacate the order, contending that it was issued without lawful authority. After considering memoranda from counsel, the district court on September 30, 1975, denied the motion. The telephone company appeals on the ground that while the government's law enforcement officers might lawfully be entitled to use a pen register under the circumstances, the district court had neither inherent nor statutory authority to deputize or compel the telephone company to assist them in so doing. We conclude that the district court had inherent authority [2] to order the telephone company's assistance in this case. Accordingly, we affirm the order of the district court.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials who are engaged in the investigation of major crimes specified in the Act. Even duly authorized law enforcement officials, as to the specified crimes, have to comply with the requisites of the Act and obtain a court order. The parties, however, agree that this case does not fall within the purview of Title III, apparently because the offenses being investigated by the government are not among those enumerated in Title III, and because a pen register does not hear sound and therefore does not accomplish an "interception" of wire communications as that term is defined by 18 U.S.C. § 2510(4).[3]

---

1. "A pen register is a mechanical device attached to a given telephone line and usually installed at a central telephone facility. It records on a paper tape all numbers dialed from that line. It does not identify the telephone numbers from which incoming calls originated, nor does it reveal whether any call, either incoming or outgoing, was completed. Its use does not involve any monitoring of telephone conversations." *United States v. Giordano*, 416 U.S. 505, 549, 94 S.Ct. 1820, 1842, 40 L.Ed.2d 341, 372 (1974) (Powell, J., concurring in part and dissenting in part).

2. The inherent authority of the district court, made necessary by the special nature of electronic communications, is not directly derived

from Fed.R.Cr.P. 41 which governs the search and seizure of "tangible" objects nor from Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2520, which governs wiretapping and electronic surveillance, although, by analogy, these statutes are supportive in this regard. See discussion *infra*.

3. 18 U.S.C. § 2510(4) defines "intercept" as the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." The pen register acquires its information by interpreting and printing out electric pulses. It does not hear sound and is therefore not "aural acquisition", which is the only acquisition authorized by Title III.

A clear exposition of the view that pen registers are not controlled by the provisions of Title III is contained in the legislative history of the Act:

> The proposed legislation is not designed to prevent the tracing of phone calls. The use of a "pen register", for example would be permissible. But see *United States v. Dote,* 371 F.2d 176 (7th Cir. 1966). The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication. S.Rep. No. 1097, 90th Cong., 2d Sess., 90 (1968), U.S.Code Cong. & Admin.News 1968, p. 2112.

■ This court and others which have considered the use of a pen register device to monitor and record the numbers dialed from a particular number have concluded that its use is not governed by Title III. *United States v. Giordano,* 416 U.S. 505, 553–54, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part); *United States v. Clegg,* 509 F.2d 605, 610 (5th Cir. 1975); *United States v. Falcone,* 505 F.2d 478, 482 (3d Cir. 1974); *United States v. Brick,* 502 F.2d 219, 223 (8th Cir. 1974); *United States v. Finn,* 502 F.2d 938, 942 (7th Cir. 1974); *Korman v. United States,* 486 F.2d 926, 931 (7th Cir. 1973); *United States v. King,* 335 F.Supp. 523 (S.D.Cal.1971); *United States v. Vega,* 52 F.R.D. 503 (E.D.N.Y.1971).[4] It has been held by one court that pen registers are within the reach of the Act when used in connection with a court-ordered Title III wiretap. *United States v. Lanza,* 341 F.Supp. 405, 422 (M.D.Fla.1972).[5] The present case, however, involved only the use of a pen register; no other wiretap or surveillance was contemplated.

With the facts and circumstances of this case falling outside the purview of Title III, it will not be necessary to determine whether the district court properly complied with the Title III requisites. The court's jurisdiction and authority necessarily must stem from other sources.

■ The district court's jurisdiction to enter an order authorizing government law enforcement agents to employ a pen register has not been disputed by the telephone company. The district court entered that part of its order based upon an affidavit signed by a special government agent which established probable cause for believing that evidence of the commission of violations of the Internal Revenue Code would be obtained by using a pen register. Such an accommodation for issuing an order for the use of a pen register was cited with apparent approval by Mr. Justice Powell in a concurring and dissenting opinion, joined by Chief Justice Burger, Mr. Justice Blackmun, and Mr. Justice Rehnquist, in *United States v. Giordano,* 416 U.S. 505, 553–54, 94 S.Ct. 1820, 1845, 40 L.Ed.2d 341, 374 (1974):

> Because a pen register device is not subject to the provisions of Title III, the permissibility of its use by law enforcement authorities depends entirely on compliance with the constitutional requirements of the Fourth Amendment. In this case the Government secured a court order, *the equivalent for this purpose of a search warrant,* for each of the two extensions of its authorization to use a pen register. [Emphasis added][6]

■ There seems nothing essentially inconsistent with this order-application accommodation in the majority opinion which rejected the evidence obtained from the use of the pen register, not because of a lack of judicial authority to issue the form of order used, but the evidence was ". . . derived from . . . [an] invalid wire interception . . . ." 416 U.S. at 511 n. 2

---

4. *But cf., United States v. Dote,* 371 F.2d 176 (7th Cir. 1966), decided prior to the enactment of Title III and overruled in part by *Korman v. United States,* 486 F.2d 926, 931–32 n.11 (7th Cir. 1973).

5. In this limited sense, *United States v. Dote, supra,* note 4, "may still have some viability",

*Korman v. United States, supra,* note 4, at 932, but this proposition is not germane to this case.

6. Probable cause for the issuance of the order for the use of the pen register is not questioned in this appeal, a position reiterated by counsel for the telephone company during oral argument.

and 533–34 n. 19, 94 S.Ct. at 1835, 40 L.Ed.2d 363. Apparently, Fed.R.Cr.P. 41, which deals with the traditional concept of search and seizure and which lodges jurisdiction and authority in the district courts to issue search warrants to search and seize "tangible" objects was not thought by the Supreme Court to be a limitation upon the power of the district court to authorize, outside Title III, reasonable use of investigative techniques rendered possible by modern technology as to "nontangibles". The commonsense approach used by the district court in issuing an order based on probable cause and following a procedure designed to comply with Fourth Amendment considerations in authorizing the use by the government of the pen register was a valid exercise of authority.

That much the telephone company seems not to question. It contends, however, that the district court possessed no authority to order the telephone company to furnish assistance. This position seems triggered by the fear of resulting civil liability when and if the subscriber learns of the installation of the pen register and the telephone company's assistive role in its installation, and possible criminal liability under the Federal Communications Act, 47 U.S.C. §§ 501 and 605.

In support of its argument, the telephone company cites *Application of United States,* 427 F.2d 639 (9th Cir. 1970) [hereinafter *Application* ]. In that case the government applied for a wiretap authorization pursuant to 18 U.S.C. §§ 2510–20 and asked the district court to order the local telephone company to provide facilities, services and technical assistance. The district court held the Act did not authorize this and refused to order telephone company assistance. The government appealed, and the court of appeals, sustaining the district court, rejected the government's argument that the district court had inherent authority to compel the cooperation of the company.[7]

Reacting directly to the decision of the Court of Appeals for the Ninth Circuit in *Application of United States, supra,* Congress immediately adopted amendments to the Act to expressly authorize a district court to require assistance from communications common carriers. 18 U.S.C. § 2518(4). The Act was also amended to remove such cooperation from the ambit of the criminal sanctions provisions, 18 U.S.C. § 2511(1)(a), and the Act was further amended to broaden the "good faith reliance on a court order" defense to both criminal and civil liability. 18 U.S.C. § 2520.

■ The telephone company argues that Congress' reaction to *Application* was acceptance of the views expressed therein. We view Congress' action more in the nature of an overruling of that opinion. If the omission in Title III to any reference to a judicial power to compel communication carriers to assist law enforcement officers had been "purposeful", as articulated in *Application*, it is highly unlikely that Congress would have immediately amended the

---

7. In *Application of United States,* 427 F.2d 639, 644 (9th Cir. 1970), the court stated:

   Congress thus acted advisedly when it formulated and enacted the legislation incorporated in Title III. It was fully aware of the physical problems involved in making investigative wiretaps, but it was nevertheless determined to enact a carefully circumscribed Act. In this setting it omitted any reference to a judicial power to require communication carriers to assist. We must conclude that the omission was purposeful, or at least that it remains unexplained on any basis which would warrant recognition of such power by implication.

   We are not convinced that the authority which the Government would have the court exercise, to compel a telephone company to assist in the investigation of suspected law violators can be derived, by analogy, from the power law enforcement officers may have to assemble a *posse comitatus* to keep the peace and to pursue and arrest law violators. Nor do we find, outside Title III, any district court authority, statutory or inherent, for entry of such an order. We think the district court correctly decided that it was without power to grant the relief requested. If the Government must have the right to compel regulated communications carriers or others to provide such assistance, it should address its plea to Congress.

Act to provide such authority. We are of the opinion that Congress originally presumed that either the communication carriers would voluntarily cooperate to effectuate the purposes of the Act or that power existed in the courts to compel compliance with otherwise valid orders authorizing electronic surveillance. Otherwise, Congress enacted a very specific statutory scheme granting authority and particularizing the conditions under which electronic surveillance—an extremely sensitive activity both politically and legally—would be used, but which could in most instances be frustrated and actually nullified by the caprice of a monopolistic communications carrier.

■ We do not think that Congress' remedial legislation, made necessary by a court decision which if unresponded to could seriously hamper the implementation of the original legislation, is necessarily preemptive and makes judicial authority in this context, which we believe already existed, dependent upon additional legislation. We believe that Congress' amendments to Title III in this regard provide strong and persuasive authority, by analogy, for the proposition that district courts in the area of electronic surveillance, inherently have power to effectively compel compliance with validly issued orders. It seems more congruent with both reason and Congressional intent to have courts, rather than the telephone company, decide if a pen register should or should not be used. The authority to compel the cooperation of the telephone company is in a sense concomitant of the power to authorize the installation of a pen register, for without the former the latter would be worthless.

■ It is conceded that the district court had authority to enter an order authorizing government law enforcement agents

to employ a pen register. Therefore, analogous authority for the proposition that the telephone company cannot frustrate the exercise of the district court's order by refusing to make available its facilities and know-how, is the All Writs Act. The All Writs Act, 28 U.S.C. § 1651 provides in pertinent part:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

This statute allows a district court to defend a proper exercise of its jurisdiction, although it does not supply jurisdiction.[8]

■ As above noted, the telephone company's concern stems from a fear of civil and criminal liability if a subscriber should learn of the company's role in the installation of a pen register. This suggested basis for this concern is the Federal Communications Act, 47 U.S.C. §§ 501 and 605, which prohibits, with certain exceptions, disclosing the existence, contents, etc. of wire communications, unless the permission of the addressee or his agent or attorney is obtained. Among the exceptions of § 605 is ". . . (6) on demand of other lawful authority." This court, in *United States v. Finn*, 502 F.2d 938, 943 (7th Cir. 1974) concluded that "[a] search warrant supported by probable cause is a 'demand of other lawful authority' within exception (6)." The district court's order in this case, while not in form a search warrant, is an order "in the nature of a . . . search warrant" and is supported by probable cause. The order in question falls within exception (6).

■ The telephone company further contends that the Civil Rights Act, 42 U.S.C. § 1983 and the Illinois Constitution, art. I, § 6, which prohibits "invasions of

---

8. Interpreting the statute, this court has previously observed:

This provision does not enlarge or expand the jurisdiction of the courts but merely confers ancillary jurisdiction where jurisdiction is otherwise granted and lodged in the court.

. . . The statute presupposes existing complete jurisdiction and does not contain a new grant of judicial power. *United States v. First Fed. S. & L. Ass'n*, 248 F.2d 804, 808–09 (7th Cir. 1957), *cert. denied*, 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958).

privacy or interceptions of communications by eavesdropping devices or other means", might provide a basis for civil liability if the district court's order is unlawful and yet obeyed. We believe that the order of the district court, which we have found to be valid, could be interposed as a defense to any civil damage suit which might be brought under these or other provisions of law on grounds apprehended by the telephone company. Congress expressly made such good faith reliance a defense to both criminal and civil suits under the terms of Title III. Recognizing that Title III and its defense provisions are not applicable to a pen register situation, the logic is nevertheless persuasive.

Finally, the telephone company argues that it is plausible that Congress did not intend to exempt pen registers entirely from Title III, but intended their use to be outside the Act only when used by the telephone company in the ordinary course of its business. The telephone company's use of a pen register is primarily to check dialing accuracy or where a subscriber complains that he is being charged for more calls than he makes. We reject this argument. In the same paragraph of Title III's legislative history which indicates that "[t]he use of a 'pen register', . . . would be permissible", we read an indication that an examination of telephone company records by law enforcement agents in the regular course of their duties would be lawful.

The judgment below is affirmed.