Application of the UNITED STATES of America IN the Matter of an ORDER AUTHORIZING the USE OF A PEN REGISTER or Similar Mechanical Device.

Misc. No. 19–97(44).

United States District Court, S. D. New York.

April 2, 1976.

George E. Ashley, New York City, for New York Telephone Co.; Frank R. Natoli, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Peter D. Sudler, Sp. Atty., U. S. Dept. of Justice, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

On March 19, 1976, this Court granted the application of the Department of Justice [1] for an order directing New York Telephone Company [2] ("Telephone") to furnish the information, facilities, and technical assistance necessary to enable agents of the Federal Bureau of Investigation ("FBI") to install "pen registers" on two telephones. The application specified two telephones subscribed to by a specified individual and located at a specific address. In response to the Court's order, Telephone moved, by order to show cause, to vacate or to modify the order. While not contesting the right

1. The Government's application was submitted by Peter D. Sudler, a Special Attorney of the United States Department of Justice, New York Joint Strike Force Against Organized Crime. The application was supported by the affidavit of Walter F. Smith, a Special Agent of the Federal Bureau of Investigation.

2. New York Telephone Company is a communications common carrier as defined in 18 U.S.C. § 2510(10).

of the Government to employ the "pen register", Telephone objected to so much of the Court's order as directed it to provide all information, facilities (including lease lines), and technical assistance necessary for the utilization of the "pen register".

Based upon the papers submitted and the arguments heard and for the reasons stated below, the motion to vacate or modify this Court's previous order is hereby denied.

Telephone challenges the Court's direction that it furnish technical assistance, including lease lines, to law enforcement officials for installation and utilization of the "pen register". Telephone does not challenge the Court's jurisdiction to authorize use of the "pen register", nor does it contend that there was no probable cause supporting the Court's order. Indeed, Telephone has been willing and continues to be willing to provide the Government with all the necessary information that would enable the FBI to install a "pen register". It is Telephone's position, however, that its facilities and technical assistance may be furnished to law enforcement officials only pursuant to an application under 18 U.S.C. §§ 2510 *et seq.* These sections constitute Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"). Title III "prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified serious offenses." *United States v. Giordano,* 416 U.S. 505, 507, 94 S.Ct. 1820, 1823, 40 L.Ed.2d 341 (1974). Briefly, the Act confers power upon the Attorney General or a specially designated Assistant Attorney General to apply for a federal court order authorizing wire interceptions. 18 U.S.C. § 2516(1).

■ A "pen register" is a mechanical device which picks up electrical impulses which are used to decode the telephone numbers dialed in outgoing calls.[3] Telephone concedes that the application for a "pen register" is *not* an application for a wire or oral interception within the purview of Title III. (Telephone's Memorandum of Law at 5).

■ There is significant authority for this Court to find that the "pen register" in this instance was not a device for wire or oral interception covered by the prescriptions of Title III. 18 U.S.C. § 2510 contains the following definition:

"As used in this chapter—

(4) 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device."

"Aural" has been defined as " 'of or relating to the sense of hearing.' " *United States v. Focarile,* 340 F.Supp. 1033, 1039 (E.D.Mo.), *aff'd sub nom. United States v. Giordano,* 469 F.2d 522 (4th Cir. 1972), *aff'd,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), *quoting* Webster's Third New International Dictionary. A "pen register" decodes phone numbers by responding to electric impulses and not to aural stimuli.

■ The legislative history of Title III clearly discloses a Congressional intent to exclude "pen registers" from the Act's strictures.

"Paragraph (4) defines 'intercept' to include the aural acquisition of the contents of any wire or oral communication by any electronic, mechanical, or other device. Other forms of surveillance are not within the proposed legislation. See *Lee v. United States,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *Corngold v. United States,* 367 F.2d 1 (9th 1966). An examination of telephone company records by law enforcement agents in the regular

---

**3.** A "pen register" is more fully defined and explained as follows:

"A pen register is a mechanical device attached to a given telephone line and usually installed at a central telephone facility. It records on a paper tape all numbers dialed from that line. It does not identify the telephone numbers from which incoming calls originated, nor does it reveal whether any

call, either incoming or outgoing, was completed. Its use does not involve any monitoring of telephone conversations. The mechanical complexities of a pen register are explicated in the opinion of the District Court. 340 F.Supp. 1033, 1038–1041 (Md.1972)." *United States v. Giordano, supra,* 416 U.S. at 549 n. 1, 94 S.Ct. at 1842.

course of their duties would be lawful because it would not be an 'interception.' (*United States v. Russo,* 250 F.Supp. 55 (E.D.Pa.1966)). The proposed legislation is not designed to prevent the tracing of phone calls. *The use of a 'pen register,' for example, would be permissible.* But see *United States v. Dote,* 371 F.2d 176 (7th 1966). *The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication.*" (Emphasis added). S.Rep.No.1097, 90th Cong., 2d Sess. at 90 (1968), 1968 U.S.Code Cong. & Admin. News, p. 2178.

Various federal courts have adopted the position that a "pen register" device is not governed by Title III. *See United States v. Illinois Bell Telephone Co.,* 531 F.2d 809 (7th Cir., 1976); *United States v. Clegg,* 509 F.2d 605, 610 (5th Cir. 1975); *United States v. Falcone,* 505 F.2d 478, 482 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975); *United States v. Finn,* 502 F.2d 938, 942 (7th Cir. 1974); *United States v. Brick,* 502 F.2d 219, 223 (8th Cir. 1974); *Korman v. United States,* 486 F.2d 926, 931 (7th Cir. 1973); *United States v. King,* 335 F.Supp. 523 (S.D.Cal.1971), *aff'd in part, rev'd in part on other grounds,* 478 F.2d 494 (9th Cir. 1973), *cert. denied,* 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *United States v. Vega,* 52 F.R.D. 503 (E.D.N.Y.1971). Finally, Mr. Justice Powell reiterated this conclusion in his opinion (concurring in part and dissenting in part) joined by The Chief Justice and Mr. Justice Blackmun and Mr. Justice Rehnquist in *United States v. Giordano, supra,* 416 U.S. at 553–54, 94 S.Ct. 1820.[4] This Court likewise holds that a "pen register" falls outside of Title III's definition of "interception".

Without disputing the nonapplicability of Title III, Telephone contends, however, that this Court's order authorizing the use of a "pen register" device "directs Telephone to furnish the FBI with the capability to perform an *interception* " (Natoli Affidavit at 3), and that a court order directing an interception must comply with the strictures of Title III. (Natoli Affidavit at 3; Telephone Memorandum of Law at 7). Although the order employs the term "interception", it clearly does not direct that type of interception contemplated by Title III. The order specifically permits only that interference, from the installation and operation of the device, necessary for the *limited* purpose of obtaining the telephone numbers of outgoing calls.

This Court adopts the jurisdictional basis for the issuance of a "pen register" that was enunciated by Mr. Justice Powell in the *Giordano* case. The minority opinion explained that

"[b]ecause a pen register device is not subject to the provisions of Title III, the permissibility of its use by law enforcement authorities depends entirely on compliance with the constitutional requirements of the Fourth Amendment. In this case the Government secured a court order, the equivalent for this purpose of a search warrant, for each of the two extensions of its authorization to use a pen register." *United States v. Giordano, supra,* 416 U.S. at 554, 94 S.Ct. at 1845.

The minority noted further:

"The Government suggests that the use of a pen register may not constitute a search within the meaning of the Fourth Amendment. I need not address this question, for in my view the constitution-

---

**4.** In *United States v. Giordano, supra,* 416 U.S. 505, 94 S.Ct. 1820, a Title III interception order was improperly obtained by an unauthorized official. The Supreme Court approved the suppression of all evidence resulting from the unlawful wiretap. Information revealed from the wiretap had formed the basis of probable cause upon which "pen registers" were subsequently authorized. The Court concluded that evidence resulting from the "pen registers" was tainted by its indirect connection with the unlawful wiretap, and was therefore inadmissible under a "fruit of the poisonous tree" rationale.

One court has observed that the substance of the minority opinion is not inconsistent with the majority holding. *See* discussion in text p. 7, *infra.*

al guarantee, assuming its applicability, was satisfied in this case." *Id.* at n. 4.[5]

Telephone does not contest the existence of probable cause underlying the issuance of the court order. The "pen register" was ordered pursuant to affidavits concerning an on-going investigation of a criminal operation for which a wiretap order had been previously authorized under Title III. This investigation, then, concerns an offense deemed serious enough to justify a Title III interception. Refusal of Telephone to assist in furnishing technical assistance and facilities would frustrate the operation of the court order, properly granted upon a showing of probable cause.

On facts substantially similar to those in the instant case, the Seventh Circuit Court of Appeals cogently reconciled Mr. Justice Powell's minority opinion with that of the majority in the *Giordano* case.

"There seems nothing essentially inconsistent with this order-application accommodation in the majority opinion which rejected the evidence obtained from the use of the pen register, not because of a lack of judicial authority to issue the form of order used, but the evidence was '. . . derived from . . . [an] invalid wire interception. . . .' 416 U.S. at 511 n. 2 and 533–34 n. 19, 94 S.Ct. at 1835, 40 L.Ed.2d 363. Apparently, Fed.R.Cr.P. 41, which deals with the traditional concept of search and seizure and which lodges jurisdiction and authority in the district courts to issue search warrants to search and seize 'tangible' objects was not thought by the Supreme Court to be a limitation upon the power of the district court to authorize, outside Title III, reasonable use of investigative techniques rendered possible by modern technology as to 'nontangibles'. The commonsense approach used by the district court in issuing an order based on probable cause and following a procedure designed to comply with Fourth Amendment considerations in authorizing the use by the government of the pen register was a valid exercise of authority." *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 812.

Finding jurisdiction for issuance of the court order under this "commonsense approach," the Seventh Circuit likewise found "inherent authority" for the district court to direct Illinois Bell's compliance with and assistance in the installation of a "pen register" by federal law enforcement agents. The court concluded that

"district courts in the area of electronic surveillance, inherently have power to effectively compel compliance with validly issued orders. It seems more congruent with both reason and Congressional intent to have courts, rather than the telephone company, decide if a pen register should or should not be used. The authority to compel the cooperation of the telephone company is in a sense concomitant of the power to authorize the installation of a pen register, for without the former the latter would be worthless.

"It is conceded that the district court had authority to enter an order authorizing government law enforcement agents to employ a pen register. Therefore, analogous authority for the proposition that the telephone company cannot frustrate the exercise of the district court's order by refusing to make available its facilities and know-how, is the All Writs Act. The All Writs Act, 28 U.S.C. § 1651 provides in pertinent part:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

This statute allows a district court to defend a proper exercise of is [sic] jurisdiction, although it does not supply jurisdiction." *Id.,* 531 F.2d at 814.

██ This Court adopts the sound reasoning of the Seventh Circuit and holds that it

---

5. *Accord, United States v. Finn, supra,* 502 F.2d at 940; *United States v. Brick, supra,* 502 F.2d at 223–24. *But see United States v. Clegg,* *supra,* 509 F.2d at 610, holding that a "pen register" does not involve a "search" within the scope of the Fourth Amendment.

804

possesses inherent jurisdiction to direct Telephone's compliance with the order. Furthermore, this Court finds jurisdiction for its directive under the All Writs Act. The mandate to Telephone is necessary to protect and effectuate the purpose of the concededly valid "pen register" order.

Accordingly, the application of Telephone to vacate or modify this Court's order authorizing the use of a "pen register" is in all respects denied.

So ordered.