Application of the UNITED STATES for an ORDER AUTHORIZING INSTAL-LATION and USE OF a PEN REGIS-TER.

UNITED STATES of America, Appellee,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Missouri Corporation, Appellant.

No. 76–1725.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1976.

Decided Dec. 9, 1976.

Rehearing and Rehearing En Banc Denied Jan. 18, 1977.

Leo E. Eickhoff, Jr., St. Louis, Mo., for appellant; John D. Rahoy and Alfred G. Richter, Jr., St. Louis, Mo., on brief.

David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., St. Louis, Mo., on brief.

Gary R. Sarachan, St. Louis, Mo., for amicus curiae, American Civil Liberties Union; Allan F. Stewart, Peter D. Zeughauser and Francis Ruppert, St. Louis, Mo., on brief.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case involves the government's application for an order authorizing the installation and use of a pen register [1] and directing the Southwestern Bell Telephone Company to provide facilities, information and technical assistance to special agents of the Federal Bureau of Investigation in the installation and use of the device. Southwestern Bell contends in this appeal that the district court [2] erred in authorizing the use of the pen register and in ordering appellant to provide technical assistance to the government. We affirm the order of the district court.

In an in camera ex parte proceeding on July 26, 1976, the United States Attorney sought and received the permission of the district court to install and monitor a pen register device to identify the outgoing telephone numbers dialed from a particular telephone. An affidavit signed by a Federal Bureau of Investigation agent set forth facts which disclosed probable cause to believe the telephone in question was being used to further the commission of a racketeering offense prohibited by Title 18, United States Code. Although the offense is one for which governmental electronic surveillance is permitted by the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, the United States Attorney did not make the application thereunder. The order issued by the district court affirmatively required Southwestern Bell Telephone Company to "furnish the applicant forthwith all facilities including lease lines, information, including the identification of lease line pairs, subscriber pairs and the location of a suitable junction box where a connection can occur, and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such carrier is providing." [3]

On July 27, 1976, the appellant moved the district court to reconsider its order and to remove the appellant from the provisions of the order. On July 30, 1976, the district court denied appellant's motion and held appellant in contempt for failure to comply with the order of July 26, 1976. No citation was issued and compliance with the order was stayed pending appeal to this court.[4] We will consider separately the two substantial questions raised on this appeal: first, whether the district court erred in holding that pen register orders are not covered by Title III of the Omnibus Crime Control and Safe Streets Act of 1968; and second, whether it erred in ordering the appellant to provide technical assistance to the government.

1. The pen register is a mechanical device whose basic function is to record numbers dialed at a telephone. Although pen register devices available to federal agents have the capability of audio interception of the conversation of the parties to a call, in this case the district court's order does not permit monitoring or recording the conversations themselves. The federal agent stated during the ex parte proceeding that he would disable these features of the pen register.

2. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

3. The order also provided that the furnishing of such facilities or technical assistance was to be compensated for by the applicant at the prevailing rates.

4. Appellant contends in this appeal that the district court erred in holding Southwestern Bell Telephone Company in contempt. Although this finding of contempt is questionable in light of appellant's prompt motion for reconsideration, we refuse to reverse the finding since no sanctions were imposed and compliance with the order was stayed pending appeal.

## I.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified serious offenses. *United States v. Giordano,* 416 U.S. 505, 507, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Appellant contends that pen register devices fall within the purview of Title III. The greater weight of authority, however, is contrary to that position. *United States v. Giordano, supra,* 416 U.S. at 553–554, 94 S.Ct. 1820 (Powell, J., concurring in part and dissenting in part); *United States v. Illinois Bell Telephone Co.,* 531 F.2d 809, 812 (7th Cir. 1976); *United States v. Clegg,* 509 F.2d 605, 610 (5th Cir. 1975); *United States v. Falcone,* 505 F.2d 478, 482 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975); *United States v. Brick,* 502 F.2d 219, 223 (8th Cir. 1974); *United States v. Finn,* 502 F.2d 938, 942 (7th Cir. 1974); *Korman v. United States,* 486 F.2d 926, 931 (7th Cir. 1973).

Title III's applicability to a pen register device turns on the definition of an "interception" of wire communications. "Interception" as defined by 18 U.S.C. § 2510(4) is "the *aural* acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device" (emphasis added). An "aural acquisition" by definition engages the sense of hearing. *United States v. Falcone, supra,* 505 F.2d at 482. The pen register device does not possess this sense. It acquires its information (the recording of numbers dialed at a telephone) by interpreting and printing out electric pulses. The conclusion is therefore inescapable that a pen register device falls outside the ambit of Title III. This conclusion is bolstered by the legislative history of the Act. As Mr. Justice Powell stated in a concurring and dissenting opinion, joined by Chief Justice Burger, Mr. Justice Blackmun, and Mr. Justice

Rehnquist, in *United States v. Giordano, supra,* 416 U.S. at 553, 94 S.Ct. at 1844:

The installation of a pen register device to monitor and record the numbers dialed from a particular telephone line is not governed by Title III. This was the conclusion of the District Court in the instant case and of the courts in *United States v. King,* 335 F.Supp. 523, 548–549 (SD Cal.1971), and in *United States v. Vega,* 52 F.R.D. 503, 507 (EDNY 1971). This conclusion rests on the fact that the device does not hear sound and therefore does not accomplish any "interception" of wire communications as that term is defined by 18 U.S.C. § 2510(4)—"the *aural* acquisition of the *contents* of any wire or oral communication through the use of any electronic, mechanical, or other device" (emphasis added). Any doubt of the correctness of this interpretation is allayed by reference to the legislative history of Title III. The Report of the Senate Committee on the Judiciary in discussing the scope of the statute explicitly states "[t]he use of a 'pen register,' for example, would be permissible." S.Rep.No.1097, 90th Cong., 2d Sess., 90 (1968).

It is our view that the propriety of a pen register's usage depends entirely upon compliance with the Fourth Amendment rather than Title III. *United States v. Giordano, supra,* 416 U.S. at 553–54, 94 S.Ct. 1820 (Powell, J., concurring in part and dissenting in part); *United States v. John,* 508 F.2d 1134, 1141 (8th Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975). The court's power to order pen register surveillance is the equivalent of the power to order a search warrant and is inherent in the district court.[5] It is clear upon the record before us that the district court issued the order based upon a showing of probable cause. We conclude that the district court's approach, with all of the attendant Fourth Amendment safeguards, was a valid exercise of authority. *Application of the United States in re Order Au-*

---

**5.** The unusual character and technological advances of electronic communications have occasioned the surfacing of this inherent authority. Although Fed.R.Crim.P. 41 governs the search and seizure of tangible objects, it is, by analogy, supportive of our conclusion.

*thorizing the Use of a Pen Register,* 538 F.2d 956 (2d Cir. 1976); *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 812–13.

## II.

■ Appellant's second contention is that the district court erred in ordering the appellant to provide technical assistance to the government.[6] In support of this argument appellant cites *Application of the United States,* 427 F.2d 639 (9th Cir. 1970), and the Congressional action which followed. In that case the government had obtained a valid wiretap order pursuant to Title III and the question arose whether the district court had inherent authority to compel the cooperation of the telephone company. The Ninth Circuit concluded that the district court had no statutory or inherent authority to enter such an order. *Application of United States, supra,* 427 F.2d at 644. Soon after this decision Congress adopted amendments to Title II which authorized the district court to direct that a communication common carrier furnish all information, facilities, and technical assistance necessary. 18 U.S.C. § 2518(4). Appellant argues that the Congressional reaction to the Ninth Circuit decision was in the nature of an acceptance of the views expressed therein. The clear Congressional intent, according to appellant, was to authorize active participation on the part of the telephone company only in connection with orders issued under Title III.

An equally persuasive argument can be made, however, that the Congressional re-

action was more in the nature of an overruling of the Ninth Circuit opinion. Congress may have originally presumed that power existed in the courts to compel compliance with orders authorizing electronic surveillance. *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 813–14. When faced with the Ninth Circuit decision, Congress reacted by legislating in an area where they had presumed the court's inherent power was sufficient. In this light Congress' amendments to Title III provide "strong and persuasive authority, by analogy, for the proposition that district courts in the area of electronic surveillance, inherently have power to effectively compel compliance with validly issued orders." *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 814.

More important than the interpretation of Congressional action, however, is the district court's finding in its memorandum of July 30, 1976. There it was stated "[t]hat without the information, leased lines and assistance [of Southwestern Bell Telephone Company] the Federal Bureau of Investigation cannot carry out the Order of this Court." In view of this finding, the inherent power of the district court to order pen register surveillance would be a nullity without the authority to compel the assistance of the telephone company. It is in a sense concomitant of the power to authorize pen register surveillance. *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 814. Therefore, we hold as did the Seventh Circuit, that the district court had inherent authority to order the telephone company's assistance.[7] *United States v. Il-*

---

6. Appellant's contention is based in part on a concern for possible exposure to civil and criminal liability. Although this question is not before us, it should be noted that 18 U.S.C. § 2520 states that "[a] good faith reliance on a court order * * * shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law." The district court also found, in its memorandum filed July 30, 1976, and incorporated in its order of the same date, that compliance by Southwestern Bell Telephone Company with the court's order would be a complete defense to any claim of criminal or civil liability.

7. An argument can be made that the All Writs Act gives the district court the power to compel the telephone company's assistance. As stated by the Seventh Circuit:

Therefore, analogous authority for the proposition that the telephone company cannot frustrate the exercise of the district court's order by refusing to make available its facilities and know-how, is the All Writs Act. The All Writs Act, 28 U.S.C. § 1651 provides in pertinent part:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their re-

linois Bell Telephone Co., supra, 531 F.2d at 811. To hold other otherwise would effectively allow the telephone company rather than the district court to decide when pen register surveillance should be used. On the record before us we find no abuse of discretion by the district court in directing that the telephone company render assistance. *See Application of the United States in re Order Authorizing the Use of a Pen Register, supra*, 538 F.2d at 964–66 (Mansfield, J., dissenting).

Affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent.

In *Application of the United States*, 427 F.2d 639 (9th Cir. 1970), the government appealed from the United States District Court for the District of Nevada's refusal to require the telephone company to assist the F.B.I. in an investigation pursuant to a valid Title III wire interception. The government argued that the *posse comitatus* rule authorized the court to order telephone company assistance. The Ninth Circuit ruled:

> We are not convinced that the authority which the Government would have the court exercise, to compel a telephone company to assist in the investigation of suspected law violators can be derived, by analogy, from the power law enforcement officers may have to assemble a *posse comitatus* to keep the peace and to pursue and arrest law violators. *Nor do we find, outside Title III, any district court authority, statutory or inherent, for entry of such an order. We think the district court correctly decided that it was without power to grant the relief requested. If the Government must have the right to compel regulated communications carriers or others to provide such assistance, it should address its plea to Congress.*

427 F.2d at 644 (emphasis added).

Thereafter the government applied to Congress for express statutory authority to require the needed assistance and Congress amended Title III to provide for such assistance. *See* 18 U.S.C. §§ 2511(2)(a)(ii), 2518 and 2520.[1]

It is inconceivable to me that although congressional action was necessary to supply the requisite court authority to compel telephone company assistance for wire interceptions under Title III, this court can find some *inherent* power to require such assistance when an application is made for

---

spective jurisdictions and agreeable to the usages and principles of law.

This statute allows a district court to defend a proper exercise of its jurisdiction, although it does not supply jurisdiction. *United States v. Illinois Bell Telephone Co., supra*, 531 F.2d at 814 (footnote omitted).

The Second Circuit assumed arguendo that a district court has inherent discretionary authority or discretionary power under the All Writs Act to compel technical assistance by the telephone company, but concluded that in the absence of specific and properly limited Congressional action it was an abuse of discretion to order the telephone company to furnish technical assistance. *Application of the United States in re Order Authorizing the Use of a Pen Register, supra*, 538 F.2d at 960–63.

1. 18 U.S.C. § 2511(2)(a)(ii) reads:

It shall not be unlawful under this chapter for an officer, employee, or agent of any communication common carrier to provide information, facilities, or technical assistance to an investigative or law enforcement officer who, pursuant to this chapter [18 USCS §§ 2510–2520], is authorized to intercept a wire or oral communication.

18 U.S.C. § 2518 provides, in pertinent part:

An order authorizing the interception of a wire or oral communication shall, upon request of the applicant, direct that a communication common carrier, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such carrier, landlord, custodian, or person is according the person whose communications are to be intercepted. Any communication common carrier, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant at the prevailing rates.

18 U.S.C. § 2520 states, in pertinent part:

A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter [18 USCS §§ 2510–2520] or under any other law.

use of a pen register *outside* of the safeguards of Title III. This makes little sense.

The majority opinion adopts the reasoning used by the Seventh Circuit in *United States v. Illinois Bell Telephone Co.*, 531 F.2d 809 (7th Cir. 1976). They urge that congressional reaction to the Ninth Circuit decision can be explained by stating that Congress was legislating in an area where it had presumed the court's inherent power was sufficient. The majority reasons, on this theory, that Congress' amendments to Title III "provide strong and persuasive authority, by analogy, for the proposition that district courts in the area of electronic surveillance, inherently have power to effectively compel compliance with validly issued orders." *See also, United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 814.

With all due respect to my learned brothers on the Seventh Circuit, this reasoning is difficult to follow. It provides an innovative explanation, but certainly a strange and new principle in the area of statutory construction. I always thought it was a fundamental rule of statutory construction that Congress does not legislate needlessly. *See Uptagrafft v. United States,* 315 F.2d 200, 204 (4th Cir. 1963); *Mogis v. Lyman-Richey Sand & Gravel Corp.,* 189 F.2d 130, 141 (8th Cir. 1951); and *Continental Ill. Nat'l Bank & Trust Co. v. United States,* 403 F.2d 721, 724, 185 Ct.Cl. 642 (1968), *cert. denied,* 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 752 (1969).

Contrary to the Ninth Circuit's holding, the majority opinion does find "inherent authority" to compel the telephone company's assistance in the area of electronic surveillance. The majority opinion evidently does not find this inherent power under the All Writs Act, 28 U.S.C. § 1651,[2] as it only mentions, in a footnote, "[a]n argument *can be made* that the All Writs Act gives the district court the power to compel the telephone company's assistance." (Emphasis added). I sense a reluctance by the majority to fully adopt the Seventh Circuit's reasoning and hold that inherent power to require the telephone company to assist the government is found in the All Writs Act. It is axiomatic that the All Writs Act does not provide an independent federal jurisdictional base but can only be used in aid of the court's jurisdiction.[3]

The majority opinion apparently rests original jurisdiction on some "inherent authority" in the district court "equivalent of the power to order a search warrant" under Fed.R.Crim.P. 41, to allow government installation of pen registers. Precedent for this reasoning is found in *Application of the United States,* 538 F.2d 956, 959 (2d Cir. 1976),[4] and *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 812–13.

---

2. 28 U.S.C. § 1651 provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

3. As stated in *Application of the United States,* 407 F.Supp. 398 (W.D.Mo.1976):

Familiar principles stated in cases such as *Brittingham v. U. S. Commissioner of Int. Rev.* (5 Cir. 1971), 451 F.2d 315, 317, need only to be stated in order to demonstrate that the government's All Writs Act contention is untenable. That case, as do many other cases, cites the leading Supreme Court and still other cases to support its statement of the following applicable general principles:

It is settled that this section, known as the All Writs Act, by itself, *creates* no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction *previously acquired on some other independent ground.* [Emphasis ours] [Citations omitted]. . . .

. . . the All Writs Act [does not] vest this Court with any independent jurisdictional power to design *ad hoc* procedures to authorize the use of a pen register device in connection with investigations of alleged offenses outside the scope of Title III.

407 F.Supp. at 405.

4. Notwithstanding its finding of inherent authority to issue a search warrant, the Second Circuit finds that a district court, within his discretion, should not issue an order to compel the telephone company to assist the government without specific congressional authorization. *Application of the United States,* 538 F.2d 956, 962 (2d Cir. 1976).

These cases recognize that Fed.R.Crim.P. 41, the recognized rule governing the application and issuance of search warrants, will not aid the government in applying for a pen register for several reasons: (1) the rule governs search and seizure of tangible objects; (2) it provides the safeguard of authorized service of the warrant by a federal officer; and (3) it provides the safeguard of notice to the party concerned.[5] It is reasoned, however, that courts should be "practical" and recognize that Rule 41 may be disregarded as long as probable cause for the search exists. *Cf. United States v. Agrusa*, 541 F.2d 690 (8th Cir., filed July 6, 1976). The argument is, of course, that notice is not necessary where it would defeat the purpose of the search. *See Katz v.*

*United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); and *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

All of this may be true, but Congress was cognizant of these facts when it passed Title III governing the circumstances when wire interception would be allowed. Under Title III, although notice, of course, is not required, additional safeguards are found in the strict rules of minimization and reporting of inventory within a fixed point of time. *See* 18 U.S.C. §§ 2518 and 2519.

Assuming, arguendo, that pen registers do not fall within the literal definition of interceptions [6] under Title III,[7] still, the only reasonable inference, based on the cumulative history of wiretap legislation,[8] is

---

5. It is interesting to note that the government conceded before the district court in *Application of the United States, supra,* 407 F.Supp. at 402, that Fed.R.Crim.P. 41 was not applicable to a request for the installation of a pen register to investigate a crime not specified in Title III. The government also conceded they knew of no other authority which would allow the court to install a pen register outside of Title III.

6. 18 U.S.C. § 2510(4) defines "intercept" as: [T]he *aural* acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device. (Emphasis added).

7. This view is tenuous. *See* The Honorable John W. Oliver's discussion in *Application of the United States, supra,* 407 F.Supp. at 406–07.

8. Judge Oliver set forth this history:
   Established principles of statutory construction require courts to recognize that Congress does not legislate in a vacuum; Congressional legislation must be viewed in light of earlier legislation enacted in connection with the same subject matter and court decisions which have definitely determined the meaning and scope of that earlier legislation. Of particular significance, so far as Congressional action in regard to electronic surveillance is concerned, are the cases which considered whether pen register devices were within the coverage of Section 605, Title 47, U.S.C., which banned all forms of electronic surveillance. See *Nardone v. United States*, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); *Weiss v. United States*, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939); *Nardone v. United States, (Nardone II)*, 308

U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); and *Benanti v. United States*, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957). Every case which considered the precise question concluded that pen registers were embraced in the prohibition of Section 605. See Chief Judge Campbell's opinion in *United States v. Guglielmo*, (N.D.Ill.1965) 245 F.Supp. 534, affirmed *sub nom. United States v. Dote* (7 Cir. 1966), 371 F.2d 176 (opinion by Chief Judge Hastings), and *United States v. Caplan* (E.D. Mich.1966), 255 F.Supp. 805 (opinion by then District, now Circuit Judge McCree). We believe that it must be assumed that Congress knew that pen register devices were included within the coverage of Section 605 of the Communications Act of 1934 (47 U.S.C. § 605), and that it knew that unless the pen register was taken out of the ban of Section 605, the use of such a device would still be prohibited. Section 803 of the Omnibus Crime Control and Safe Streets Act amended Section 605 to clearly reflect that all electronic surveillance is now to be governed by Title III. Senate Report No. 1097, reprinted 2 U.S.C. Code Congressional and Administrative News, 90 Cong., 2d Sess. at 2196, stated:
   Section 803.—This section amends section 605 of the Communications Act of 1934 (48 Stat. 1103, 47 U.S.C. sec. 605 (1958)). This section is not intended merely to be a reenactment of section 605. The new provision is intended as a substitute. The regulation of the interception of wire or oral communications in the future is to be governed by proposed new chapter 119 of title 18, United States Code.
   *Application of the United States, supra,* 407 F.Supp. at 405–406.

that the only wire interceptions to be authorized are those subject to the safeguards of Title III. The Supreme Court decision in *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), supports this view. Mr. Justice Brennan succinctly observed:

> In Title III, Congress enacted a comprehensive scheme for the regulation of *wiretapping* and *electronic* surveillance. See *United States v. United States District Court*, 407 U.S. 297, 301–306 [92 S.Ct. 2125, 2128–2131, 32 L.Ed.2d 752]. Title III authorizes the interception of private *wire* and oral communications, but *only* when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given *except upon compliance with stringent conditions*. 18 U.S.C. §§ 2516, 2518(1)–(8). If a *wire* or oral communication is intercepted in accordance with the provisions of Title III, the contents of the communication may be disclosed and used under certain circumstances. 18 U.S.C. § 2517. Except as expressly authorized in Title III, however, *all interceptions of wire* and oral communications are flatly prohibited. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, 18 U.S.C. § 2511(1), and the victim of such interception, disclosure, or use is entitled to recover civil damages, 18 U.S.C. § 2520. Title III also bars the use as evidence before official bodies of the contents and fruits of illegal interceptions, 18 U.S.C. § 2515, and provides procedures for moving to suppress such evidence in various proceedings, 18 U.S.C. § 2518(9)–(10).

408 U.S. at 46, 92 S.Ct. at 2360 (emphasis added).

Where pen registers are authorized in conjunction with Title III intercepts, they are, of course, allowed and the safeguards of Title III apply. *See United States v. John*, 508 F.2d 1134 (8th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975); *United States v. Brick*, 502 F.2d 219 (8th Cir. 1974). Pen registers may also be used without court authority by the telephone companies for the limited purpose of policing their own equipment. *See United States v. Harvey*, 540 F.2d 1345 (8th Cir. 1976); *United States v. Dote*, 371 F.2d 176 (7th Cir. 1966). It may very well be, as the telephone company urges, that this is why Congress failed to specifically include pen registers under Title III. Nonetheless, when pen registers are sought to be used to investigate a crime included under Title III, as here (racketeering offense), compliance with either Title III or Rule 41 is the only means which provides constitutional safeguards for their use.

The majority's rationale is surely dangerous precedent. Judicial authority to compel a private party to assist the government in the invidious act of electronic surveillance should be based on defined authority. Wire interception of any communication constitutes a direct invasion of privacy. Congress initially outlawed all wire interceptions. Act of June 19, 1934, c. 652, Title VI, § 605, 48 Stat. 1103 (Federal Communications Act) (amended 1968). Subsequently Congress carefully studied limited circumstances where wire interceptions could be utilized, subject to constitutional safeguards. The result of that study was the passage of Title III. Under that Act, Congress authorized wire interceptions for the investigation of specific crimes as long as the safeguards of minimization and supervision by the court were evinced. It is troublesome to me that we now not only authorize government agents, but compel a resisting private corporate enterprise, to conduct pen register surveillance without court supervision. It is conceded by the parties that such surveillance can be abused and that private conversations on touch-tone telephones (as involved here) can be intercepted. *Cf. United States v. Harvey, supra.*

To me it is wrong that the judicial branch of government can thwart congressional intent and purpose by conjuring up some convenient, mystical authority through the pseudonym of "inherent power."

I would quash the order.