616 F.2d 1122
 In the Matter of The APPLICATION OF the UNITED STATES OF
AMERICA FOR AN ORDER AUTHORIZING AN IN-PROGRESS
TRACE OF WIRE COMMUNICATIONS OVER
TELEPHONE FACILITIES.
UNITED STATES of America, Plaintiff-Appellee,
v.
MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, Defendant-Appellant.
 No. 78-2366.
 United States Court of Appeals,
Ninth Circuit.
 April 9, 1980.
 
 C. Webb Crockett, Phoenix, Ariz., on brief; George T. Cole, Phoenix, Ariz., for defendant-appellant.
 Kenneth L. Fields, Asst. U. S. Atty., Phoenix, Ariz., on brief; Dale Danneman, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before DUNIWAY and FARRIS, Circuit Judges, and ORRICK,* District Judge.
 ORRICK, District Judge:
 This case presents the question whether a district court, acting upon an application of the United States, possesses the power to issue an order compelling a duly licensed public utility, in this case the Mountain States Telephone & Telegraph Company ("Mountain Bell"), to perform an in-progress trace of telephone calls by means of electronic facilities within its exclusive control. Believing the district court has such power, we hold its order valid and affirm.
 I.
 A.
 On April 7, 1978, the United States Attorney in Phoenix, Arizona, made an ex parte application for an order authorizing the installation of a telephone tracing device (commonly known as a "grabber") upon a telephone line then being used by a special agent of the Internal Revenue Service ("IRS"). The application was accompanied by the agent's affidavit, in which he alleged that he had received telephone calls from an individual soliciting wagers for professional sporting events, in violation of 26 U.S.C. §§ 7201, 7203, and 7262. The purpose of the request was to aid the investigation by providing information helpful in discovering the telephone number, name, and address of the calling party. Upon finding probable cause to believe that the calling party was using the telephone system in violation of federal law, and that installation of the tracing device would lead to information helpful in the investigation, a United States magistrate entered an order authorizing the IRS to install the device, and directing Mountain Bell to provide "all information, facilities * * * and technical assistance necessary to accomplish the installation unobtrusively." The order also required that Mountain Bell be compensated for whatever services were provided.
 Concerned about the breadth of the order and the possibility of interference with regular telephone service, Mountain Bell submitted to the United States Attorney a proposed order curtailing the tracing operation in several ways. The proposal limited the hours during which the trace could operate, exempted the telephone company from manual tracing or from providing standby company personnel, limited the trace to electronic facilities only, required the consent of the party called, and restricted the times at which agents could request information developed in the operation. Two weeks later, on April 21, the district court, at the request of the United States Attorney, modified the April 7 order to bring it into substantial compliance with the proposal by Mountain Bell. As modified, the April 7 order directed appellant to perform an in-progress trace of wire communications over telephone facilities, but restricted the operation to the use of Electronic Switching System ("ESS") facilities, during limited hours, and required the consent of the party called.
 On May 26, 1978, again by an ex parte application, the United States requested a second order authorizing the in-progress trace of a wire communication over telephone facilities. This application was supported by the affidavit of the same IRS agent who, with the aid of the earlier order, had ascertained the name, address and telephone numbers of the suspected bookmaker, who operated a sporting goods store in Phoenix. The purpose of the second request, according to the affidavit, was to enable authorities to trace incoming calls received by the suspect. Upon finding probable cause to believe that the suspect was violating the law, that operation of an in-progress trace would yield evidence helpful to the investigation, and that reasonable efforts had failed to secure the information by other means, the district judge granted the government's request.
 Acting pursuant to Rule 41 of the Federal Rules of Criminal Procedure,[1] and the All Writs Act, 28 U.S.C. § 1651(a),[2] the district court ordered installation of a tracing operation. This Order (which is the subject matter of this appeal and is herein called "the Order"), the full text of which is set forth at the margin,[3] was directed to both the IRS and Mountain Bell and ordered the latter to comply as follows:
 "Install and operate an electronic or mechanical device designed to trace and record the telephone number of a dialing party or parties when said party or parties call telephone numbers 247-1972, 247-1973, and 247-1975.
 Continue the operation of such in-progress tracing operation for a period not to exceed twenty (20) days from the date of this Order.
 All information gathered by reason of this Order be turned over to Special Agents of the Internal Revenue Service * * *."
 In addition, apparently cognizant of the objections expressed by appellant in connection with the April 7 Order, the court placed strict limitations upon the operation, providing that:
 "the in-progress tracing operation be limited to telephone company facilities employing 'ESS' switching facilities bearing a reasonable relationship to the probable originating point of telephone calls to be made to Earl L. Zimner, doing business as Earl's Sporting Goods, Inc., telephone numbers 247-1972, 247-1973, and 247-1975; provided further that the in-progress tracing operation does not require or involve any manual trace by telephone company personnel or otherwise necesitate (sic ) that telephone company personnel stand by to actively monitor or maintain the in-progress tracing operation; and that the in-progress tracing operation can be accomplished unobtrusively and with a minimum of interference to the telephone service and not unduly interfere with the telephone company operations, facilities or personnel nor be unduly burdensome * * *."
 Finally, the district court required that appellant be compensated and/or reimbursed for all expenses incurred in complying with the Order.
 Shortly after the Order was entered, Mountain Bell moved to vacate, arguing that: (1) the Order was unduly burdensome and would disrupt normal telephone service; (2) the district court lacked authority to compel Mountain Bell to participate in a criminal investigation; and (3) the activities required by the Order could subject Mountain Bell to civil liability. Appellant did not complain that the ex parte nature of the prior proceeding offended due process nor did it argue that the Order constituted a taking without compensation. During a June 5 evidentiary hearing, it came to light that the tracing operation ordered by the court was identical to operations routinely undertaken by the company without court order in a variety of circumstances. Appellant's Area Security Supervisor testified that tracing operations of this kind were undertaken in response to obscene or annoying calls, or following telephone threats. This information had been communicated to the government prior to its application for in-progress traces.
 Testimony was also elicited concerning the impact of the Order upon Mountain Bell's provision of normal telephone services. For the first time, appellant complained that use of ESS facilities for such purposes threatened maintenance operations, by periodically tying up a teletype machine otherwise used to perform maintenance functions. Appellant's technical expert also testified that although traces alone posed no danger of creating a communication shutdown, their impact, combined with other problems, could bring about such a result. No evidence was presented which demonstrated that actual problems had arisen as a result of the tracing operation.
 The court denied appellant's motion to vacate. This ruling, together with the Order, provide the basis for the present appeal, over which this court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellant here challenges the Order on three grounds, namely, that (1) the court lacked power to enter the Order; (2) the ex parte nature of the Order constituted a violation of due process; and (3) because the Order did not provide adequate compensation for the services required to be rendered, it involved a "taking * * * without just compensation" in derogation of the Fifth Amendment.
 B.
 A great deal is made by appellant of the differences between the ESS trace ordered here and the pen register device at issue in United States v. New York Telephone Co., 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (hereinafter cited as "New York Telephone "). Accordingly, it is necessary to describe these techniques in some detail. The pen register, from a legal point of view, is substantially similar to an ESS trace but differs from it somewhat from a practical point of view.
 Both the pen register and the ESS trace are designed to record, through the monitoring of electrical impulses created by the turning of the telephone dial, actual telephone numbers to or from which calls are placed. Neither system is intended to monitor or record the contents of oral telephone communications, nor does either establish whether or not a given call has actually been completed. Rather, each device simply produces a listing of telephone numbers: the pen register records the telephone numbers to which all outgoing calls are made from the monitored telephone, while an ESS trace records the numbers from which incoming calls to the subject telephone have been made.
 The pen register is a device attached to a given telephone line which records all numbers dialed on that line. The device is installed by connecting it with the line at a point where the line makes an "appearance" in the terminal near the telephone number under investigation. An appearance is the point at which the specific pair of wires serving the monitored telephone emerge from the sealed cable. If an appearance is not made at a terminal convenient for surveillance by law enforcement officers, the officers can request and obtain, pursuant to tariff, a leased line, that is to say, an unused telephone line which makes an "appearance" in the same terminal as the monitored line. The leased line is cross-connected to the subject line, and monitored at a more remote site, where the pen register is connected. As a general rule, the actual connection, installation and operation of the pen register can be and are performed by law enforcement officers. The telephone company simply identifies the pair of wires providing service to the subject telephone line and then provides a leased line.
 The ESS facilities used here consist of fully automated, electronic switching equipment which routes telephone calls through central switching offices. Such equipment is the most advanced in use by Mountain Bell. It was employed in the present case to trace and identify the telephone numbers from which calls were made to the suspect numbers. This is accomplished by programming a control computer to "trap" incoming calls to the designated telephone number. Computers that route the incoming calls from the exchange in which they originate from the dialing telephone must also be programmed. In this case twelve computers were programmed, including those in the Phoenix metropolitan area. When a call is made to the number, ESS identifies it as a call requiring unusual handling, and the call is momentarily halted while the computer searches its memory to find the appropriate program to process the call. Once the computer recognizes the call trace program, it establishes the calling number, if possible, records this information in its memory for a later print-out on a teletypewriter, and completes the call to the receiving telephone number. This process takes two and one half as much machine time as it takes to process a normal call. This delay in the lines and in the teletype machines which print out the numbers could obscure potential maintenance problems which otherwise could be avoided.
 As the above discussion suggests, there is from the standpoint of the present controversy but a single relevant difference between these devices. In the case of the pen register, the device may be physically operated by law enforcement officers after limited assistance from the telephone company (i. e., provision of information as to the location of the appearance, identification of the relevant wires, and provision of a leased line). Tracing through ESS facilities, on the other hand, because it is entirely automated, must be activated by the programing of a computer by a technician of the telephone company.
 II.
 It is important to recognize at the outset the relative narrowness of the issues presented on appeal. No telephone subscriber is here complaining that it is a violation of his rights to trace calls being received by his telephone or being sent from his telephone to that of another subscriber. The telephone company does not assert that the order violates any rights belonging to it under the Fourth Amendment to the Constitution.[4] It does not assert that the use of tracing devices violates the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, which prohibits electronic surveillance by persons other than duly authorized law enforcement officers. It is not claiming that there was prohibited surveillance here, because no conversation was overheard by anyone.
 The principal question presented on this appeal is whether or not the district court had the power to compel Mountain Bell to perform the tracing operation requested by the United States.[5] We think this matter was decided in the affirmative by the Supreme Court in New York Telephone. That case established that Rule 41 of the Federal Rules of Criminal Procedure, supplemented by the auxiliary power contained in the All Writs Act, 28 U.S.C. § 1651, authorizes a federal district court, in appropriate cases, to order a telephone company to participate in electronic surveillance carried out upon the request and under the supervision of federal law enforcement officers. The judicial gloss placed upon Rule 41 by the Court is certainly sufficient to embrace the action ordered here.
 In New York Telephone, the government applied for an order authorizing agents of the Federal Bureau of Investigation ("FBI") to install and operate pen registers with respect to two telephone lines, and directing the New York Telephone Company to furnish the FBI "all information, facilities, and technical assistance" necessary to employ the pen registers unobtrusively. The application was supported by an affidavit stating that certain individuals were conducting an illegal gambling enterprise from a Manhattan address and that, on the basis of the facts set forth in the affidavit, there was probable cause to believe that telephones were being used in furtherance of illegal activity. The district court, finding cause, granted the application. Its order authorized the FBI to operate pen registers with respect to the two telephones and directed the telephone company to provide the necessary assistance. The court concluded that both the All Writs Act and its inherent powers provided the authority to direct the company to assist in the installation of the pen registers.
 On these facts, the Supreme Court held that Rule 41 authorized the use of the pen register. New York Telephone, supra, 434 U.S. at 168-70, 98 S.Ct. at 370-71. Despite the fact that, by its express terms, the rule does not appear to permit the "seizure" of "intangibles" such as electronic dial impulses (see Rule 41(b)), the Court found it a sufficient basis for the action of the district court:
 "This authorization is broad enough to encompass a 'search' designed to ascertain the use being made of a telephone which is suspected of being employed as a means of facilitating a criminal venture and the 'seizure' of evidence which the 'search' of the telephone produces." Id. at 169, 98 S.Ct. at 370.
 In so doing, the Court relied upon Katz v. United States, 389 U.S. 347, 83 S.Ct. 507, 19 L.Ed.2d 576 (1967), which held, inter alia, that Rule 41 is not limited to tangible items but is "sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause." Id., at 169, 98 S.Ct. at 371.[6]
 Turning next to the question of the district court's power to command the participation of third parties such as the New York Telephone Company Justice White concluded:
 "(T)he power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed. We conclude, however, that the order issued here against respondent was clearly authorized by the All Writs Act and was consistent with the intent of Congress." New York Telephone, supra, 434 U.S. at 172, 98 S.Ct. at 372 (footnote omitted).
 Relying upon the All Writs Act, authorizing courts to issue all writs necessary or appropriate in aid of their respective jurisdictions,[7] the Court made the commonsense observation that, without the participation of the telephone company, "there is no conceivable way in which the surveillance authorized * * * could have been successfully accomplished." Id. at 175, 98 S.Ct. at 373-374.
 The principles announced in New York Telephone compel the same result here. The Order was issued upon application of the United States, supported by an affidavit sufficient to establish probable cause. It authorized the installation of devices which, as discussed above, were virtually identical in terms of their intrusive effect to the pen register utilized in New York Telephone. Precisely in the manner approved there, the district court, relying upon Rule 41, ordered the cooperation and participation of the telephone company, whose assistance was critical to carry out the Order. Moreover, the prerequisites outlined by the Supreme Court as necessary to invoke the provisions of the All Writs Act were clearly present here. To a greater extent than in New York Telephone, the refusal by Mountain Bell to cooperate would have completely frustrated any attempt to accomplish the tracing operation. Nor was appellant any more distant from the criminal activity, or more interested in avoiding compliance. In this regard, Justice White's comments are fully apt:
 
 
 1
 "(W)e do not think that the Company was a third party so far removed from the underlying controversy that its assistance could not be permissibly compelled. A United States District Court found that there was probable cause to believe that the Company's facilities were being employed to facilitate a criminal enterprise on a continuing basis. For the Company, with this knowledge, to refuse to supply the meager assistance required by the FBI in its efforts to put an end to this venture threatened obstruction of an investigation which would determine whether the Company's facilities were being lawfully used. Moreover, it can hardly be contended that the Company, a highly regulated public utility with a duty to serve the public, had a substantial interest in not providing assistance. Certainly the use of pen registers is by no means offensive to it. The Company concedes that it regularly employs such devices without court order for the purposes of checking billing operations, detecting fraud, and preventing violations of law." Id. at 174-75, 98 S.Ct. at 373 (footnote omitted).[8]
 
 
 2
 Appellant argues, however, that the technological differences between pen registers and tracing by ESS facilities serve to distinguish this case. According to Mountain Bell, New York Telephone merely authorized a district court to compel the "meager assistance" of the telephone company in an operation otherwise carried out by federal law enforcement officials. Relying upon the requirement of Rule 41(c) that warrants "shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof," and upon the terms of 18 U.S.C. § 3105,[9] appellant argues that the Order here was fatally defective in that it was not directed to law enforcement officers, but instead "placed the entire responsibility for the search on Mountain Bell."
 
 
 3
 In the context of the present case, this is a distinction without a difference. The order was directed to both the IRS agents and to Mountain Bell. The fact that the only actions ordered, except for payment of compensation, were to be carried out by Mountain Bell merely recognized the practical fact that the actions ordered were technical ones which only that company could perform. New York Telephone would, subject to inquiry as to burdensomeness, uphold the order had it directed the IRS agents to institute the trace and directed Mountain Bell to provide the necessary information facilities and technical assistance. In fact this is what the order did direct before it was amended to conform to the limiting requests of Mountain Bell. The "search" was carried out at the request of agents of the IRS, who designated the narrow target of the inquiry (i. e., three telephone numbers) as well as the information to be developed therein. Throughout the operation, the agents remanded solely responsible for the use to be made of the information obtained. Under such circumstances, there was no abuse of either Rule 41 or 18 U.S.C. § 3105. For, as the language of those provisions makes clear, the requirement that warrants be served only by law enforcement officers contemplates the traditional situation in which the pursuit of tangible property takes place through means of a physical search of persons or places. But the use of electronic surveillance, such as pen registers and traces, is to a large extent sui generis:[10] no warrant is "served," no persons or premises are "searched," no confrontation between government and citizen takes place; rather, a computer is programmed to detect electronic impulses which, when decoded, provide a list of telephone numbers. Once it is determined that such an operation is constitutionally permissible, Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), it appears to this court to make little difference whether, as with pen registers, federal agents install the device and then monitor it themselves, or, as in the case of traces using ESS facilities, telephone company technicians acting at the behest of federal officials perform these functions. For all of the above reasons, the district court acted within the powers conferred upon it by Rule 41 and the All Writs Act.[11]
 
 
 4
 The result we reach is supported by the congressional judgment that tracing operations of the kind employed here are legitimate law enforcement techniques, properly utilized in appropriate circumstances. In enacting Title III, Congress chose not to subject pen registers and like devices to the rigid authorization requirements imposed by the Act. The legislative history makes clear that Congress intended such techniques to be available:
 
 
 5
 "Paragraph (4) defines 'intercept' to include the aural acquisition of the contents of any wire or oral communication by any electronic, mechanical, or other device. Other forms of surveillance are not within the proposed legislation. An examination of telephone company records by law enforcement agents in the regular course of their duties would be lawful because it would not be an 'interception.' The proposed legislation is not designed to prevent the tracing of phone calls. The use of a 'pen register,' for example, would be permissible. The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication." S.Rep. No. 1097, 90th Cong., 2d Sess. 90, reprinted in (1968) U.S.Code Cong. & Admin.News pp. 2112, 2178 (citations omitted) (emphasis added).
 
 
 6
 Moreover, based upon its immediate reaction to the decision of this circuit in Application of United States, 427 F.2d 639 (9th Cir. 1970), Congress apparently believes that federal courts possess the authority to order the cooperation of private carriers in electronic surveillance. In Application, this circuit found a district court without authority to compel the assistance of a telephone company in a Title III wiretap. The Congress immediately responded by enacting 18 U.S.C. § 2518(4), which provides such authority. The enactment, as well as the swiftness with which it was accomplished, constitutes a reaffirmation of congressional belief that such authority plainly exists. Other courts have reached the same conclusion. New York Telephone, supra, 434 U.S. at 177, n.25, 98 S.Ct. at 374, n.25; United States v. Southwestern Bell Telephone Co., 546 F.2d 243, 246 (8th Cir. 1976). Finally, as Justice White has observed, with reference to 18 U.S.C. § 2518(4):
 
 
 7
 "In light of this direct command to federal courts to compel, upon request, any assistance necessary to accomplish an electronic interception, it would be remarkable if Congress thought it beyond the power of the federal courts to exercise, where required, a discretionary authority to order telephone companies to assist in the installation and operation of pen registers, which accomplish a far lesser invasion of privacy." New York Telephone, supra, 434 U.S. at 176-77, 98 S.Ct. at 374 (footnote omitted).
 
 
 8
 Our conclusion accords with that reached by other federal courts which have expressly considered the issue in the context of tracing operations. Michigan Bell Telephone Co. v. United States, 565 F.2d 385 (6th Cir. 1977); In re Application of United States, 610 F.2d 1148 (3d Cir. 1979). In Michigan Bell, the United States, in the course of a gambling investigation, sought and obtained an order compelling the telephone company to employ tracing devices, both manual and electronic, on two designated telephones. The Sixth Circuit, in the face of challenges identical to those raised here, affirmed:
 
 
 9
 "Common sense dictates that, as technology makes possible the seizure of intangibles, the courts should not limit the scope of Rule 41, but rather we should interpret the rule so as to effectuate its purpose.
 
 
 10
 It is to be emphasized that a telephone company is no ordinary third party. It is a public utility, enjoying a monopoly in an essential area of communications. It owns and controls the telephone facilities involved in the present case. The district court found that there was probable cause to believe that these facilities were being used for criminal purposes. The telephone company is the only entity that can effectuate the orders of the district court to prevent company-owned facilities from being used in violation of both state and federal laws." Michigan Bell Telephone Co. v. United States, supra, 565 F.2d at 389.
 
 
 11
 The court relied upon the combined authority of Rule 41 and the All Writs Act to justify the district court's order. Accord, In re Application of United States, supra.
 
 
 12
 Finally, appellant urges that even if the district court had authority to command its assistance, the burdens imposed by the Order were unreasonable. Of course, as the Supreme Court has indicated, "unreasonable burdens may not be imposed." New York Telephone, supra, 434 U.S. at 172, 98 S.Ct. at 372. Mountain Bell contends that the district court exceeded its discretion in this regard, in that the Order (1) resulted in a serious drain upon existing personnel and equipment; and (2) increased the likelihood of system malfunctions while at the same time impairing the company's ability to correct such problems. We see no reason whatsoever to reverse the trial court's conclusion that the obligations imposed upon appellant were reasonable ones. The Order was extremely narrow in scope, restricting the operation to ESS facilities, excluding the use of manual tracing, prohibiting any tracing technique which required active monitoring by company personnel, and requiring that operations be conducted "with a minimum of interference to the telephone service." Appellants did not show that the trace here involved significantly increased the possibility of a malfunction or that there was a high probability of a malfunction produced by this trace in conjunction with other court-ordered traces. Nor did appellants prove that the compensation provided for in the Order was in any way inadequate.
 
 
 13
 We therefore hold that the Order of the district court was a proper exercise of its discretion under Rule 41 and the All Writs Act. This holding is a narrow one, and our decision today should not be read to authorize the wholesale imposition upon private, third parties of duties pursuant to search warrants. Rather, we merely hold that in the context of properly authorized telephone tracing operations, telephone companies may be ordered to participate under appropriate circumstances. To a great extent, this result depends not only upon the sui generis character of such surveillance, but also upon the highly regulated, public nature of Mountain Bell.
 
 III.
 
 14
 Mountain Bell next complains that the ex parte Order, because it required the commitment of personnel and equipment to the tracing operation without prior notice or a hearing thereon, constituted a deprivation of property without due process, in derogation of the Fifth Amendment. The issue was not raised below, and it has long been a rule of practice in this circuit that issues not placed before the district court will not be decided on appeal unless "there are significant questions of general impact or when injustice might otherwise result." United Continental Tuna Corp. v. United States, 550 F.2d 569, 574 (9th Cir. 1977), quoting from Krause v. Sacramento Inn, 479 F.2d 988, 989 (9th Cir. 1973). Accordingly, this court declines to reach the due process issue.[12]
 
 
 15
 Because of the important nature of the interests at stake, however, and pursuant to our authority to supervise the administration of criminal justice within the circuit, Marshall v. United States, 360 U.S. 310, 313, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959); United States v. Fischer, 381 F.2d 509, 512 (2d Cir. 1967), cert. denied, 390 U.S. 973, 88 S.Ct. 1064, 19 L.Ed.2d 1185 (1968), we believe that a telephone company whose cooperation in electronic surveillance is sought should be afforded reasonable notice and an opportunity to be heard prior to the entry of any order compelling its assistance.[13] Such a procedure is necessary to enable all parties to present to the court relevant factors from which a determination of the "reasonableness" of any subsequent order can be made. Of course, such hearings can proceed in camera so as not to alert others to the possibility of surveillance. Without attempting to present an exhaustive enumeration of the factors to be considered at such a hearing, the court finds the following to be appropriate: (1) the likelihood that the surveillance will develop information useful in a criminal prosecution; (2) the availability of alternative means for obtaining the information; (3) the extent of the burdens which the requested surveillance would place upon the telephone company; (4) the extent to which restrictions upon the scope of the surveillance can minimize interference with company operations; and (5) the likelihood that the company can be fully compensated for the services provided.
 
 
 16
 Such a procedure will safeguard the interests of communications carriers, will not interfere with the government's pursuit of appropriate investigative tools, and will provide the district courts with a sound basis for the wise exercise of their discretion.
 
 
 17
 The Order of the district court is AFFIRMED.
 
 
 
 *
 Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Rule 41 of the Federal Rules of Criminal Procedure provides in pertinent part:
 "(a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property sought is located, upon request of a federal law enforcement officer or an attorney for the government.
 (b) Property Which May Be Seized with a Warrant. A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.
 (c) Issuance and contents.
 (1) Warrant upon affidavit. A warrant other than a warrant upon oral testimony under paragraph (2) of this subdivision shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States."
 
 
 [2]
 The All Writs Act provides:
 "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1966).
 
 
 [3]
 The Order of the district court reads as follows:
 "ORDER
 AUTHORIZING THE IN-PROGRESS TRACE OF WIRE COMMUNICATIONS
 TO: Special Agents of the Internal Revenue Service, United States Department of the Treasury and the Mountain States Telephone and Telegraph Company
 An affidavit having been made before me by Edward F. Kellerman, Special Agent of the Internal Revenue Service, United States Department of Treasury, and full consideration having been given to the matter set forth therein, the Court finds:
 a. There is probable cause to believe that Earl Zimner, AKA "JACK," doing business as Earl's Sporting Goods, Inc., 4105 North 51st Avenue, Phoenix, Arizona, has been and is now using the telephone system to violate Title 26, United States Code, Sections 7201, 7203, and 7262.
 b. There is probable cause to believe that evidence of the commission of the above-described offenses will be obtained by means of an in-progress trace of incoming calls to telephone numbers 247-1972, 247-1973, and 247-1975 over a (20) day period; said in-progress trace to be accomplished by means of an electronic or mechanical device which will record the telephone number of a dialing party when such party calls a specified telephone number.
 c. There have been reasonable efforts on behalf of the United States to obtain this information through other means which have failed.
 WHEREFORE, it is hereby ordered that pursuant to Rule 41, Federal Rules of Criminal Procedure, and Title 28, United States Code, Section 1651(a):
 The Mountain States Telephone and Telegraph Company is hereby authorized and ordered to:
 (1) Install and operate an electronic or mechanical device designed to trace and record the telephone number of a dialing party or parties when said party or parties call telephone numbers 247-1972, 247-1973, and 247-1975.
 (2) Continue the operation of such in-progress tracing operation for a period not to exceed twenty (20) days from the date of this Order.
 Provided that the in-progress tracing operation be limited to telephone company facilities employing 'ESS' switching facilities bearing a reasonable relationship to the probable originating point of telephone calls to be made to Earl L. Zimner, doing business as Earl's Sporting Goods, Inc., telephone numbers 247-1972, 247-1973, and 247-1975; provided further that the in-progress tracing operation does not require or involve any manual trace by telephone company personnel or otherwise necesitate (sic ) that telephone company personnel stand by to actively monitor or maintain the in-progress tracing operation; and that the in-progress tracing operation can be accomplished unobtrusively and with a minimum of interference to the telephone service and not unduly interfere with the telephone company operations, facilities or personnel nor be unduly burdensome; provided further that the in-progress tracing operation be limited to the hours of 8:00 a. m. to 6:00 p. m.
 IT IS FURTHER ORDERED THAT:
 (1) All information gathered by reason of this Order be turned over to Special Agents of the Internal Revenue Service, United States Department of Treasury;
 (2) That Mountain States Telephone and Telegraph Company be compensated and/or reimbursed for all charges and/or expenses at the prevailing rates for services or equipment furnished and/or expenses incurred in complying with this Order."
 
 
 [4]
 There can no longer be any constitutional objection to the voluntary compliance of a telephone company with the request of a law enforcement agency for a pen register or trace. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)
 
 
 [5]
 We do not understand the government to argue, nor could it, that because the surveillance authorized by the district court has been completed, the case is therefore moot. Under the principles set forth in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), the issue presented here is one "capable of repetition, yet evading review." United States v. New York Telephone Co., 434 U.S. 159, 165, n. 6, 98 S.Ct. 364, 368, n. 6, 54 L.Ed.2d 376 (1977) (hereinafter cited as "New York Telephone )
 
 
 [6]
 Justice White's majority opinion found additional support for this conclusion in the terms of Rule 57(b) of the Federal Rules of Criminal Procedure, which provides:
 "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."
 
 
 [7]
 A court may issue all writs necessary in aid of its potential jurisdiction. FTC v. Dean Foods, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), even though no proceeding is later begun. Thus in this case the order is in aid of the court's potential jurisdiction to receive an indictment if significant violations of the law are discovered
 
 
 [8]
 As to Mountain Bell's status as a public utility, see Ariz.Const., Art. 15 § 2; Ariz.Rev.Stat. §§ 40-202, 40-203, 40-204 (1974)
 
 
 [9]
 18 U.S.C. § 3105 provides:
 "A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."
 
 
 [10]
 Several courts have recognized the unique and unusual character of such modern law enforcement techniques. See United States v. Southwestern Bell Telephone Co., 546 F.2d 243, 245, n. 5 (8th Cir. 1976); United States v. Illinois Bell Telephone Co., 531 F.2d 809, 813 (7th Cir. 1976)
 
 
 [11]
 Some federal courts which have considered this problem have justified the use of pen registers and the like through reference to "inherent authority." United States v. Southwestern Bell Telephone Co., supra n. 10, 546 F.2d at 245; United States v. Illinois Bell Telephone Co., supra n. 10, 531 F.2d at 811. Although the Supreme Court has acknowledged the existence of the doctrine, New York Telephone, supra n. 5, 434 U.S. at 172, n. 19, 98 S.Ct. at 372, n. 19, we do not understand its holding to rest upon that ground. Id., at 181, 98 S.Ct. at 376 (Stevens, dissenting). We, likewise, see no need to embrace such a broad proposition, and rest our decision solely upon Rule 41 and the All Writs Act, as explicated in New York Telephone
 
 
 [12]
 For the same reason, we do not reach appellant's claim that the Order, because it failed to provide adequate reimbursement, was a "taking * * * without just compensation." The court notes that the Order provided that appellant "be compensated and/or reimbursed for all charges and/or expenses at the prevailing rates for services or equipment furnished and/or expenses incurred in complying with this Order." Particularly in light of the narrow scope of the Order, noted above, it would appear that the district court required adequate compensation for all services rendered
 
 
 [13]
 The Third Circuit in In re Application of United States, 610 F.2d 1148 (3d Cir. 1979), has held that due process requires a hearing on the issue of burdensomeness before compelling a telephone company to provide tracing assistance. Id., at 1156-1157